LATHAM & WATKINS LLP
Timothy L. O'Mara (Bar No. 212731)
*tim.o'mara@lw.com*
Alicia R. Jovais (Bar No. 296172)
*alicia.jovais@lw.com*
Robin L. Gushman (Bar No. 305048)
*robin.gushman@lw.com*
Samuel R. Jeffrey (Bar No. 347533)
*Sam.jeffrey@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

*Attorneys for Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGINA CENDEJAS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>LIVE NATION ENTERTAINMENT, INC., TICKETMASTER L.L.C., and DOES 1 to 100,<br><br>Defendants. | Case No. 2:25-cv-4791<br><br>**DEFENDANTS LIVE NATION ENTERTAINMENT, INC. AND TICKETMASTER L.L.C.'S NOTICE OF REMOVAL**<br><br>*From the Superior Court of California, County of Los Angeles, Case No. 24STCV30090* |

**TO THE CLERK OF COURT, PLAINTIFFS, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants Live Nation Entertainment, Inc. ("Live Nation") and Ticketmaster L.L.C. ("Ticketmaster") (each a "Defendant" and collectively "Defendants"), through undersigned counsel, hereby file this Notice of Removal to remove the above-captioned action—with reservation of all defenses and rights—from the Superior Court of California, County of Los Angeles, to the United States District Court for the Central District of California, Western Division, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, based on the following:

## I. THE COMPLAINT

1. On November 14, 2024, 363 plaintiffs filed a Complaint in the Superior Court of California, County of Los Angeles, captioned *Georgina Cendejas, et al. v. Live Nation Entertainment, Inc., et al.*, Case No. 24STCV30090 (the "State Court Action").

2. Before serving Defendants with the original Complaint, these plaintiffs filed a First Amended Complaint ("Amended Complaint") on February 25, 2025. Among other changes, the Amended Complaint added 317 additional named plaintiffs (collectively with the original plaintiffs, "Plaintiffs"). This amendment brought the total number of Plaintiffs to 680.

3. On April 25, 2025, Plaintiffs served the Summons and Amended Complaint on Defendants.

## II. THIS COURT HAS FEDERAL QUESTION JURISDICTION OVER PLAINTIFFS' RICO CLAIM AND SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE-LAW CLAIMS

4. This Court has federal question jurisdiction over Plaintiffs' RICO claim pursuant to 28 U.S.C. § 1331. *See* Am. Compl. ¶¶ 827-32. "The district courts shall have original jurisdiction of all civil actions arising under the … laws … of the United States." 28 U.S.C. § 1331. A civil RICO claim is a claim arising under the

laws of the United States. *See, e.g.*, *WFG Nat'l Title Ins. Co. v. Dadyan*, 2017 WL 3835675, at *5 (C.D. Cal. Aug. 31, 2017) (denying remand of case asserting RICO claim because "[f]ederal district courts have original jurisdiction in actions 'arising under the Constitution, laws, or treaties of the United States[,]' [and] RICO is a law of the United States.").

5. This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367(a). *See* Am. Compl. ¶¶ 725-826. With certain limited exceptions, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). Here, the same factual allegations form the basis of Plaintiffs' RICO claim and their state-law claims. And there are no "novel or complex issue[s] of [s]tate law," nor any reason to think the state-law claims will "substantially predominate" over the RICO claim. 28 U.S.C. § 1367(c). Accordingly, this Court has supplemental jurisdiction over the state-law claims. *See, e.g.*, *Destfino v. Kennedy*, 2008 WL 4901195, at *2 (E.D. Cal. Nov. 12, 2008) (finding "supplemental jurisdiction over the state law claims" when "all the claims for fraudulent conduct arise from the same operative facts as the RICO claim"), *aff'd sub nom. Destfino v. Reiswig*, 630 F.3d 952 (9th Cir. 2011)); *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995) (affirming pendent jurisdiction over state law claims when "[t]he operative facts for both the RICO and the state law claims are the same").

## III. ALTERNATIVELY, THIS COURT HAS DIVERSITY JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT

6. Alternatively, this Court has diversity jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"). *See* 28 U.S.C. § 1332(d). CAFA's "provisions should be read broadly," and there is a "strong preference" that interstate actions like this one "should be heard in a federal court if properly removed

by any defendant." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (quoting S. Rep. No. 109-14 at 43 (2005)); *see also id.* ("[N]o antiremoval presumption attends cases invoking CAFA."). As relevant here, CAFA allows federal courts to exercise jurisdiction over "mass actions," defined as "any civil action … in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact," 28 U.S.C. § 1332(d)(11)(B)(i), where certain requirements are satisfied. Specifically, jurisdiction is proper if: (1) *any* plaintiff is a citizen of a state different from *any* defendant (*i.e.*, minimal diversity exists), and (2) the amount in controversy exceeds $5 million in the aggregate and $75,000 for individual plaintiffs. 28 U.S.C. §§ 1332(d)(2), (d)(6), (d)(11)(B)(i). The Amended Complaint demonstrates that these requirements are satisfied here.

7. This conclusion is supported by the fact that this case is essentially a carbon copy of another complaint—filed by the same counsel against most of the same defendants on behalf of some of the same plaintiffs—which a court in this District already determined "satisfies the requirements under CAFA, no matter how that statute is interpreted." *See Barfuss, et al. v. Live Nation Entertainment, Inc., et al.*, No. 2:23-cv-01114-GW-DTBx (C.D. Cal.) ("*Barfuss*"), Tentative Ruling on Plaintiffs' Mot. to Remand, ECF No. 64 at 7 ("*Barfuss* Order Denying Remand," attached hereto as **Exhibit A**).[1] The only salient differences between this case and *Barfuss*—the expanded number of Plaintiffs (680 here, versus 256 in *Barfuss* at the time of removal) and the addition of a federal claim—only *increase* the amount in controversy and therefore further highlight the propriety of removal under CAFA.[2]

---

[1] The court in *Barfuss* (the Honorable George H. Wu of the Central District of California) adopted the *Barfuss* Tentative Ruling on Plaintiffs' Motion to Remand in full. *See Barfuss*, Order Denying Plaintiffs' Mot. to Remand, ECF No. 65.

[2] On May 15, 2025, the Third Amended Complaint in *Barfuss* was dismissed with leave to amend for most claims. *Barfuss*, Order of Dismissal, ECF No. 166.

**A. This Case Is a Mass Action**

8. The Amended Complaint identifies 680 Plaintiffs who seek monetary relief and propose to try their claims jointly—almost *seven times* the number of Plaintiffs required for this case to qualify as a mass action under CAFA. *See* Am. Compl. ¶¶ 34-717. Further, the Amended Complaint does not allege any facts or raise any legal questions specific to any individual Plaintiff; rather, every allegation is made, and every claim is asserted, on behalf of all Plaintiffs. *See, e.g.*, *id.* at 15 (stating that all "Plaintiffs … allege as follows," before setting forth all allegations in the Amended Complaint); *see also id.* ¶¶ 725, 736, 750, 755, 758, 772, 781, 790, 799, 806, 814, 827 (each Claim for Relief beginning with "Plaintiffs" and setting forth all allegations on behalf of all Plaintiffs); *see also id.* at 72 (Prayer for Relief requesting monetary relief on behalf of all "Plaintiffs"). There can be no dispute that this case is a "mass action" as defined by CAFA.[3]

**B. Minimal Diversity Is Satisfied**

9. For purposes of establishing federal jurisdiction, CAFA requires only minimal diversity—that is, at least one plaintiff must be a citizen of a state different from the state of citizenship of any named defendant. 28 U.S.C. § 1332(d)(2)(A).

10. "[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). At the time of the filing of this lawsuit, and at the time of removal, Defendant Live Nation was and is a corporation incorporated under the laws of Delaware, with its principal place of business in Beverly Hills, California. Am. Compl. ¶ 719. Live Nation is therefore a citizen of Delaware and California under 28 U.S.C. § 1332(c)(1).

---

[3] In *Barfuss*, the plaintiffs did not contest that the presence of 256 plaintiffs in that case met the "mass action" requirement, and Plaintiffs here cannot reasonably contest that the presence of 680 Plaintiffs also meets that requirement. *See Barfuss*, Plaintiffs' Mot. to Remand, ECF No. 54 at 5 n.1.

11. "[A]n unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). For the purpose of determining minimal diversity under CAFA, a limited liability company ("L.L.C.") is deemed an "unincorporated association." *Hurt v. SH Group Hotels & Residence U.S. LLC*, 2024 WL 5244725, at *2 (C.D. Cal. Dec. 30, 2024) ("CAFA instructs courts to determine an LLC's citizenship, as an unincorporated association, based on its principal place of business and State of organization."). At the time of the filing of this lawsuit, and at the time of removal, Defendant Ticketmaster was and is an L.L.C. organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business in Beverly Hills, California. Am. Compl. ¶ 720. Ticketmaster is therefore a citizen of Virginia and California under 28 U.S.C. § 1332(d)(10).

12. A person's state citizenship is determined by her state of domicile. Approximately 600 of the Plaintiffs in this case are domiciled in states *other* than Delaware, California, and Virginia—such as Texas, Missouri, New York, North Carolina, Kansas, Florida, and Ohio, to name just a few—and so they are diverse from both Live Nation and Ticketmaster. *See* Am. Compl. ¶¶ 37-717.

13. Minimal diversity therefore exists because at least one Plaintiff is a citizen of a different state than either Defendant. *See* 28 U.S.C. § 1332(d)(2)(A).[4]

**C. The Alleged Amount in Controversy Exceeds $5 Million in the Aggregate and $75,000 for Each Plaintiff**

14. CAFA provides that, "[i]n any class [or mass] action, the claims of the individual class members [or plaintiffs] shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. §§ 1332(d)(6), (d)(11)(A). In the case of mass actions

[4] In *Barfuss*, the plaintiffs did not contest that CAFA's minimal diversity requirement was met, and Plaintiffs here cannot reasonably do so either. *See* *Barfuss*, Plaintiffs' Mot. to Remand, ECF No. 54 at 5 n.1.

(as opposed to traditional class actions), there is an additional requirement that "jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under [28 U.S.C. § 1332(a)]," which requires that the amount in controversy for each Plaintiff exceed $75,000. 28 U.S.C. § 1332(d)(11)(B)(i). In other words, CAFA confers federal jurisdiction over a mass action where the aggregate amount in controversy exceeds $5 million, and over individual plaintiffs participating in that mass action whose individual amount in controversy exceeds $75,000.

15. The amount in controversy is first assessed by reviewing the allegations of the operative complaint. *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 998 (9th Cir. 2007), *overruled on other grounds as recognized by Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) ("Our starting point is 'whether it is "facially apparent" from the complaint that the jurisdictional amount is in controversy.'" (citation omitted)). Where, as here, "the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." *Dart Cherokee*, 574 U.S. at 84. Evidentiary submissions are not required to establish the amount in controversy. *Id.* at 81; *see also Salter v. Quality Carriers, Inc.,* 974 F.3d 959, 963 (9th Cir. 2020) (same). Rather, Defendants need only provide "a short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a), containing "only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89. As the Ninth Circuit has explained, the amount in controversy under CAFA is the "amount *at stake*" in the litigation; it "does not mean likely or probable liability [but] rather … refers to possible liability." *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020); *see also Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe.").

16. Plaintiffs do not allege a specific dollar amount of damages, but a review of the Amended Complaint—and a comparison to the allegations at the time of removal in *Barfuss*, its nearly identical sister suit which has already been deemed removable as a mass action under CAFA—demonstrates that the amount in controversy requirements are plainly met.

17. Plaintiffs seek damages and attorneys' fees—plus numerous other forms of relief—based on sweeping allegations of unfair and anticompetitive conduct that touch on virtually every aspect of Defendants' business. These allegations are entirely without merit, and Defendants deny any and all liability. But for purposes of this Notice of Removal, taking Plaintiffs' allegations as true and correct, Defendants believe and allege that the "possible" amount in controversy could easily exceed $5,000,000 in aggregate, and $75,000 for each individual Plaintiff, exclusive of interest and costs. *See Dart Cherokee*, 574 U.S. at 89; *Greene*, 965 F.3d at 772. This assessment is supported by the fact that the court in *Barfuss* has already decided that the substantially similar allegations in that case were "more than sufficient under CAFA" in the aggregate and individually. *See* Ex. A, *Barfuss* Order Denying Remand at 6-7.

18. As in *Barfuss*, Plaintiffs' allegations here include, for example, that: "Ticketmaster is the dominant online venue for concert presale, sale, and resale in the United States," and "has violated the policy, spirit, and letter of [the California antitrust laws] by imposing agreements and policies at the retail and wholesale level that have prevented effective price competition across a wide swath of online ticket sales," Am. Compl. ¶ 31; that "Ticketmaster is a monopoly that is only interested in taking every dollar it can from a captive public," *id.* ¶ 32; that "Ticketmaster has allied with stadiums to entrench its dominance to harm consumers in California and across the United States," *id.* ¶ 33; and that "Defendants' anticompetitive behavior has substantially harmed and will continue to substantially harm … competition in the ticket sales market and the Secondary Ticket Services Market," *id.* ¶ 2, "affecting

a not insubstantial volume of commerce," *id.* ¶ 763. As a result of this alleged conduct, Plaintiffs claim that Ticketmaster has "remov[ed] competition from both the Primary and Secondary [ticketing] markets," and "gained inflated revenues otherwise unavailable to it." *Id.* ¶ 7. Plaintiffs do not allege the specific amount of these supposedly "inflated revenues," but they do claim that "Ticketmaster is the largest ticketing company and the dominant provider of Primary Ticket Platform services in the U.S. with 2014 revenues of approximately $1.55 billion." *Id.* ¶ 721.[5]

19. As in *Barfuss*, Plaintiffs use these sweeping allegations as the basis for their claims for damages and attorneys' fees in each of their Causes of Action:

a. The First, Second, and Third Causes of Action (for breach of contract, fraud, and general negligence and negligent representation, respectively) each allege that Plaintiffs "sustained damages proximately caused by Ticketmaster … in the amount of thousands of dollars." Am Compl. ¶¶ 729, 735, 748, 754. Additionally, the Second Cause of Action (for fraud) also alleges that Plaintiffs should "recover, in addition to actual damages, punitive damages adequate in light of its net worth to make an example of and to punish Ticketmaster, in an amount to be proven at trial." *Id.* ¶ 749.

b. The Fourth Cause of Action asserts six separate claims for purported "antitrust violations" (*i.e.*, unlawful tying, exclusive dealings, price discrimination, price fixing, group boycotting, and market division scheme), alleging that: (1) the violations have caused Plaintiffs injury "in an amount not presently known with precision, but which is, at minimum, thousands of dollars per Plaintiff" and (2) "Plaintiffs, in addition to actual damages, [are entitled to] punitive damages to make an example of and to punish Defendants

---

[5] *Compare with Barfuss*, Am. Compl., ECF No. 1-1 ¶¶ 1, 26, 27, 28, which includes identical allegations.

in an amount to be proven at trial." *Id.* ¶¶ 769, 771, 778, 780, 787, 789, 796, 798, 803, 805, 811, 813. Plaintiffs also allege in each of these antitrust claims that they are entitled to attorneys' fees. *Id.* ¶¶ 770, 779, 788, 797, 804, 812.

c. The Fifth Cause of Action (for alleged violation of "California UCL Section 17200") alleges that "Ticketmaster's unlawful, unfair, and deceptive business practices have caused Plaintiffs to part with value in an amount not presently known with precision, but which is, at minimum, in the thousands of dollars per Plaintiff." *Id.* ¶ 826.

d. The Sixth Cause of Action (for alleged violation of "18 U.S.C. Section 1962(c)") alleges that "[a]s a direct and proximate result of Defendants' actions in violation of RICO, Plaintiffs have suffered damages in the amount of thousands of dollars each." *Id.* ¶ 832. Plaintiffs also allege in the Sixth Cause of Action that they are entitled to attorneys' fees. *Id.*[6]

20. As in *Barfuss*, Plaintiffs use their sweeping allegations of anticompetitive conduct to support numerous additional forms of relief in their Prayer for Relief, including: treble damages; that the Court order "such mandatory injunctions as may reasonably be necessary to restore and preserve fair competition"; that Ticketmaster "disgorg[e] ill-gotten gains arising from its anticompetitive acts"; restitution; costs of suit; and "such other and further relief as the court may deem just and proper." *Id.* at 73-74.[7]

21. All of Plaintiffs' requested relief may be considered in calculating the amount in controversy—including actual damages, punitive damages, treble damages, injunctive relief, and attorneys' fees. *See, e.g.*, *Davenport v. Mut. Benefit*

---

[6] The RICO claim is the only new claim not alleged in *Barfuss*.

[7] *Compare with Barfuss*, Am. Compl., ECF No. 1-1 at 43-44, which includes a substantially identical Prayer for Relief.

*Health & Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages may be considered in calculating the amount in controversy); *Borgeson v. Archer-Daniels Midland Co.*, 909 F. Supp. 709, 719 (C.D. Cal. 1995) (treble damages under the Cartwright Act may be considered in calculating the amount in controversy); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (injunctive relief in the form of "the object of the litigation" may be considered in calculating the amount in controversy); *Goldberg v. CPC Intern., Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982) (attorneys' fees can be taken into account in determining the amount in controversy if a statute authorizes fees to a successful litigant, and the Cartwright Act so authorizes under Cal. Bus. & Prof. Code § 16750(a)); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (projected future amount of attorneys' fees required to litigate the case through trial counts toward the amount in controversy calculation). Moreover, in addition to Plaintiffs' requests for damages, injunctive relief, and attorneys' fees, any requests for relief that would entail a payment by Defendants—including, for example, disgorgement of "ill-gotten gains," Am. Compl. at 73—must also be included in calculating the amount in controversy. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) (even though certain relief sought by plaintiffs, such as back payment of benefits and taxes, and an accounting of moneys due to plaintiffs, "do not fall comfortably within the realm of 'damages' and are not labeled as such in the Prayer for Relief," such relief must be included in calculating the amount in controversy because "the recovery sums would entail a payment by [defendant]"); *see also* Ex. A, *Barfuss* Order Denying Remand at 4-5 (confirming that "compensatory damages," "treble damages, injunctive relief, disgorgement of ill-gotten gains, compensation for deadweight loss to the economy, [and] restitution under the UCL" are all "included when determining the amount in controversy").

22. Plaintiffs' suit puts at issue far more than CAFA's $5,000,000 aggregate and $75,000 individual thresholds. But even if this assessment were not

clear from the Amended Complaint, Plaintiffs are not writing on a blank slate. As explained, this suit is a near-carbon copy of *Barfuss*, which was recently assessed to involve a potential amount in controversy of "over $100 million—more than sufficient under CAFA." Ex. A, *Barfuss* Order Denying Remand at 6. This case is substantially identical to that one: it involves largely verbatim allegations regarding alleged damages suffered during onsales for major events, brought by the same counsel, on behalf of some of the same Plaintiffs (Julie Barfuss, for example, is a plaintiff in both *Barfuss* and this suit[8]), raising nearly the same or very similar claims for relief for alleged breach of contract, fraud, misrepresentation, tying, exclusive dealings, price discrimination, price fixing, group boycotting, and UCL violations.[9] Defendants removed that case pursuant to CAFA, making substantially the same arguments regarding the amount in controversy as they do here. *See Barfuss*, Notice of Removal, ECF No. 1 at 4-13. When the *Barfuss* plaintiffs sought to remand that case by contesting the amount in controversy, Judge Wu rejected their arguments

---

[8] The presence of Plaintiffs like Ms. Barfuss in both cases is improper, including because Ms. Barfuss seeks damages in both cases against the same defendants based on the same alleged conduct. *See* Am. Compl. at ¶ 226; *see also id.* Ex. A to Am. Compl. at 5. But the claims of these repeat plaintiffs remain relevant for calculating the amount in controversy at this stage. *See Korn*, 536 F. Supp. 2d at 1205 ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe.").

[9] The Amended Complaint in this case is substantially identical to the current Third Amended Complaint in *Barfuss*. Plaintiffs' counsel readily admit this. On their website, TakeDownTicketmaster.com, they describe this suit as "similar to our ongoing case, *Barfuss, et al., v. Live Nation, et al.*," but note that it "include[s] an additional claim for Live Nation's violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act." Kinder Law PLCC, *All Fans v. Ticketmaster*, Take Down Ticketmaster, https://www.takedownticketmaster.com/lawsuit (last visited May 27, 2025). While there are slight differences between the Amended Complaint here and the *Barfuss* First Amended Complaint that was operative at the time of removal in that case—for example, the claim for "intentional misrepresentation" has since been replaced in the *Barfuss* Third Amended Complaint and in the Amended Complaint here with "negligent misrepresentation," *see Barfuss* Am. Compl., ECF No. 1-1 ¶¶ 301-10; *Barfuss* Third Am. Compl., ECF No. 128 ¶¶ 419-22; Am. Compl. ¶¶ 750-54—these minor differences between the operative complaints at the time of removal are irrelevant to whether the CAFA amount in controversy threshold is satisfied, because the shared claims meet the amount in controversy requirements on their own. *See* n.10, *infra*.

and found that the highly similar allegations there on behalf of 256 plaintiffs raised an aggregate and individual "amount in controversy [that] satisfies the requirements under CAFA, no matter how that statute is interpreted." Ex. A, *Barfuss* Order Denying Remand at 7. Nothing has changed that would support a different result here.

23. In fact, there are only three salient differences between this case and *Barfuss*, each of which makes it even clearer that removal is proper here. *First,* there are currently 680 Plaintiffs in this case, compared to 256 in *Barfuss* at the time of removal. Because each Plaintiff demands thousands of dollars in damages and other relief for each cause of action, the inclusion of more than 400 additional Plaintiffs here only *increases* the aggregate amount in controversy.[10] *Second,* the claims in *Barfuss* primarily relate to the onsale for Taylor Swift's The Eras Tour, while the claims in this case relate to The Eras Tour *and* more than 60 additional onsales. *See* Am. Compl. ¶ 1. If 256 plaintiffs demanding damages related to a single onsale was enough to exceed CAFA's jurisdictional minimum in *Barfuss*, then 680 Plaintiffs demanding similar damages related to dozens of additional onsales exceed it by far more. And *third*, Plaintiffs here have added an additional federal RICO claim not present in *Barfuss*, for which they demand thousands of dollars of damages per Plaintiff, with trebling, plus attorneys' fees. *See* Am. Compl. at 73. The inclusion

---

[10] These additional Plaintiffs do not undercut the finding in *Barfuss* that the individual amount in controversy requirement is met. In *Barfuss*, Judge Wu agreed that a proper method of assessing compliance with the individual amount in controversy threshold was dividing the aggregate amount in controversy by the total number of plaintiffs—if the resulting number exceeded $75,000, then the individual amount in controversy threshold was met as well. *See* Ex. A, *Barfuss* Order Denying Remand at 7 (citing *Aana v. Pioneer Hi-Bred Intern., Inc.*, 2012 WL 3542503, at *2 (D. Haw. 2012)). Judge Wu assessed that the *Barfuss* plaintiffs' demand for disgorgement alone—which is also present and unchanged in this case, *see* Am. Compl. at 15, 73 (demanding "disgorge[ment of] ill-gotten gains arising from [Defendants'] anticompetitive acts")—put more than $100,000,000 in controversy in the aggregate. Ex. A, *Barfuss* Order Denying Remand at 7. Dividing $100,000,000 by the 680 Plaintiffs here results in an individual amount in controversy of more than $147,000, which exceeds the CAFA individual threshold of $75,000 on its own, even setting aside all of the other claims for relief in the Amended Complaint.

of another claim demanding even more in damages on behalf of each of the 680 Plaintiffs only increases the amount in controversy in this case.

24. This analysis is more than enough to demonstrate the propriety of removal under CAFA, but a look at the huge amounts in controversy in other comparable antitrust cases—*e.g.*, those alleging market allocation, exclusive dealing, price-fixing, price discrimination, group boycotting, tying, and violations of the Cartwright Act and California's Unfair Competition Law against other large companies—may also be illustrative. *See, e.g.*, *Ackers v. Google*, No. 5:19-cv-05537 (N.D. Cal.), Compl. at 3-5, ECF No. 1-1 (plaintiffs, Google customers, alleged violations of the Cartwright Act—including for alleged price discrimination—and California's Unfair Competition Law, and prayed for ***$1 billion*** in damages); *Rumble, Inc. v. Google LLC*, No. 4:21-cv-00229, Compl. ¶¶ 1, 71-105, ECF No. 1 (antitrust lawsuit against Google for Sherman Act violations, including for alleged tying arrangements, alleged ***$2 billion*** in damages); *In re: Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal.), Consolidated Second Am. Class Action Compl. ¶¶ 282-362, ECF No. 172, and Order re Consumer Pls.' Class Certification Mot. and Defs.' Mot. to Exclude Expert Testimony at 18, ECF No. 383 (in consumer antitrust class action against Google for violations of the Cartwright Act and California's Unfair Competition Law—including for alleged "establishment and maintenance of supra-competitive pricing," tying, "imposing unnecessary technological barriers" to exclude competition, and "fraudulent" conduct—plaintiffs' expert calculated an aggregate alleged damage figure of ***$4.71 billion***); *Donald R. Cameron, et. al. v. Apple Inc.*, No. 4:19-cv-03074-YGR (N.D. Cal.), Compl. ¶¶ 118-53, ECF No. 1, and Order Granting Mot. for Final Approval of Class Action Settlement at 14, ECF No. 491 (antitrust class action of application developers against Apple alleging violations of the Sherman Act, including for alleged price fixing, and California's Unfair Competition Law settled for ***$100 million***); *In re: Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-cv-20000-RDP

(N.D. Ala.), Final Order Granting Approval of Subscriber Class Action Settlement at 1-2, 9, ECF No. 2931 (antitrust class action by subscribers against Blue Cross Blue Shield alleging Sherman Act violations, including for alleged market division scheme, settled for ***$2.67 billion***); *In re: Urethane Antitrust Litig.*, No. 2:04-md-01616-JWL (D. Kan.), First Am. Consolidated Compl. ¶¶ 43-46, ECF No. 307, and Am. Judgment at 1, ECF No. 2964 (antitrust class action against the Dow Chemical Company for Sherman Act violations—including for alleged price fixing and market division scheme—obtained a jury verdict award of ***$1 billion***); *Kaiser Found. Health Plan Inc. v. Merck & Co. Inc. et. al*, No. 4:21-cv-05497-HSG (N.D. Cal), Compl. at ¶¶ 187-93, ECF No. 59 (plaintiffs sought damages of at least ***$140 million*** based on defendant's alleged anticompetitive conduct). The possible damages for antitrust cases like this one are so large because of the size of the companies being sued, the amount of commerce and revenue potentially impacted by the alleged conduct, and the availability of treble damages. In assessing the propriety of removal for *Barfuss*, Judge Wu found that these comparisons to "antitrust cases against large corporate defendants with verdicts/settlements in the billions of dollars" properly contributed to the "show[ing] that the potential liability here far exceeds CAFA's threshold." Ex. A, *Barfuss* Order Denying Remand at 5. The same is true here.

25. In sum, there need "only [be] a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" for removal to be proper under CAFA. *Dart Cherokee*, 574 U.S. at 89. That standard is easily satisfied here. As discussed, Judge Wu has already found that a highly similar case raised an amount in controversy that was "*more than* sufficient under CAFA" for removal. *See* Ex. A, *Barfuss* Order Denying Remand at 6 (emphasis added). Other antitrust lawsuits against large companies have alleged aggregate damages well above the jurisdictional threshold—potentially in the billions of dollars. Given the damages claims in similar cases, and considering Plaintiffs' sweeping allegations and all of the relief they request—including a minimum of "thousands of dollars" of actual

damages allegedly suffered by each of the 680 Plaintiff under each Cause of Action, treble damages, "punitive damages adequate in light of Defendants' adequate net worth to make an example of and to punish them," "such mandatory injunctions as may reasonably be necessary to restore and preserve fair competition," and disgorgement of "ill-gotten gains," (Am. Compl. at 72-73)—it is more than plausible that the amount in controversy exceeds $5,000,000 in the aggregate and $75,000 for each Plaintiff. *See Dart Cherokee*, 574 U.S. at 89; *Greene*, 965 F.3d at 772.

## IV. VENUE AND INTRA-DISTRICT ASSIGNMENT

23. Because Plaintiffs' Amended Complaint was filed in the Superior Court of California, County of Los Angeles, this District and its Western Division are the proper venue and intra-district assignment for this action upon removal, as they encompass the location in which the State Court Action is currently pending (*i.e.*, Los Angeles, California). *See* 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the *district* and *division* embracing the place where such action is pending." (emphases added)).

24. For efficiency purposes, Defendants are concurrently filing a Notice of Related Case to relate this action to its largely identical predecessor, *Barfuss*, over which Judge Wu presides. Defendants respectfully request that this case be assigned to Judge Wu upon removal.

## V. COMPLIANCE WITH 28 U.S.C. § 1446

25. This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 1446(a).

26. The Summons and Amended Complaint were personally served on Defendants on April 25, 2025. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the Summons, Amended Complaint, Notice of Service of Process, and other pleadings are attached hereto as **<u>Exhibits B-S</u>**. Exhibits B-S constitute all of the

process, pleadings, and orders served on Defendants to date in the State Court Action.

27. This Notice of Removal is timely, as it is filed within thirty (30) days of Defendants' receipt of the Summons and Amended Complaint, as calculated under Federal Rule of Civil Procedure 6(a).[11] *See* 28 U.S.C. § 1446(b)(2)(B); *Murphy Bros v. Michetti Pipe Stringing*, 526 U.S. 344, 347-48 (1999) ("service of the summons and complaint" triggers removal deadline).

28. Defendants will serve written notice of the removal of this action upon all adverse parties promptly, and will file such notice with the Clerk of the Superior Court of California, County of Los Angeles, as required by 28 U.S.C. § 1446(d).

29. Defendants do not waive, and expressly reserve, all objections, defenses, and exceptions to the Amended Complaint authorized by law, including but not limited to those permitted pursuant to Rule 12 of the Federal Rule of Civil Procedure.

Dated: May 27, 2025

Respectfully Submitted,

LATHAM & WATKINS LLP

By: */s/ Timothy L. O'Mara*

Timothy L. O'Mara

*Attorneys for Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C.*

[11] Defendants were served on April 25, 2025, meaning that the thirty-day removal deadline would ordinarily land on Sunday, May 25, 2025. Under Rule 6(a)(1), that deadline is extended to "the end of the next day that is not a Saturday, Sunday, or legal holiday," meaning that the deadline is Tuesday, May 27, after Memorial Day. Fed. R. Civ. P. 6(a)(1).