# EXHIBIT C

EXHIBIT C
Page 33

1  GENGA & ASSOCIATES, P.C.
   JOHN M. GENGA, SBN 125522
2  jgenga@gengalaw.com
   16501 Ventura Blvd., Suite 400
3  Encino, CA 91436
   (747) 231-3400 | Fax: (818) 474-7070
4
   JENNIFER ANNE KINDER (pro hac vice)
5  KINDER LAW PLLC
   jkinder@justcallkinder.net
6  3701 W. Northwest Hwy, Suite 201
   Dallas, Texas 75220
7  (214) 812-9800; Fax (214) 484-2144

8

9  Attorneys for Plaintiffs GEORGINA CENDEJAS, *et al.*

10              SUPERIOR COURT OF CALIFORNIA

11                COUNTY OF LOS ANGELES

12

13 GEORGINA CENDEJAS, JENNIFER CARRICK,      Case No.: 248TCV30090
   JORDYN APPLEBAUM, NICOLE WILL,
14 DAYTON DOERING, BRIANA ABBOTT,            **COMPLAINT FOR DAMAGES**
   KAYJO KARNITZ, KIM KARNITZ, JENNIER
15 BEAN, KATELYN HUNT LAWRENCE,              **DEMAND FOR JURY TRIAL**
   ASHLEY M, BECK, LISA JOHNSON, PATRICK
16 JOHNSON, OMAR CASTILLO, ASHLEY
   SNYDER, KRISTEN JOHNSON-EDMONDS,
17 LAURA VOHS, SIMONE COTTERELL, ERIN
   KAUTZ, SARA BEERS, CASEY THOMAS,
18 JONATHAN RAMIREZ, AMANDA PANOU,
   JOANNAH CHEUNG, ABBY MARQUART,
19 MICHAEL COVELLI, RITA WEEKS, MADISON
   COLASANTI, FARREN SHANNON, JORDAN
20 TAIT, ALEX GELFAND, MEGAN HENRY,
   RUDY MONTOYA, CARMEN LI, EMELYN
21 AUAD, BRIDGET DIMAMBRO, BOWIE
   WANG, ELIZABETH HANSON, JACKIE
22 SMITH, EMILY HIMES, WILLIAM
   PATZWALD, LAUREN TAYLOR, NICOLE
23 ANDERSON, DAN GERFEN, EDDIE ARIAS,
   CYDNEE KLEIN, ALIYAH BRYANT, SARAH
24 LONG, CONNER LONG, AMANDA
   GIARRANTANA, STACIE WATSON, ATHENA
25 NITSOS, NICOLE SZKOLA, AMY HAYS,
   ANIQUE WATSON, CELESTE FIGUEROA
26

27

28

Electronically FILED by
Superior Court of California,
County of Los Angeles
11/14/2024 8:01 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By C. Vega, Deputy Clerk

**COMPLAINT**
- 1 -

EXHIBIT C
Page 34

| | |
|---|---|
| 1 | GUERRERO, AMANDA FAIRBANKS, CASEY |
| 2 | SIMMONS, GAJEECA SEYARAJ, TEJAS RUPAREL, RAYAAN A JAMA, KIMBERLY |
| 3 | KENNEY, JAMI PARENTE, KRICHELLE MILLER, ALEXIS GOURAN, THOMAS |
| 4 | MARGIANO, DANIELA MARTINEZ, REESE GREEN, KAYLIE RODESILER, CAITLIN |
| 5 | THOMPSON, KRISTA DOWNS, KAYLA SMITH, TORINA CALDERA, ALYSSA SKALA, |
| 6 | HEATHER WARNER, ANA ISABEL DUARTE, |
| 7 | SHERI GRAHAM, CHRISTIAN ROMERO, MEGAN SMITH, DANIELLE MURDOCK, |
| 8 | ALDEN GIBSON, BRAELYNN HUTCHINSON, |
| 9 | VINNY THOMAS, NICK MORALES, SARAH MEDINA, MARIAH GARZA, JESSICA |
| 10 | O'DONNELL, PHEELEEN YU, LISA FLYNN, DIANA BURGESS, JENNA HECKATHORN, |
| 11 | CARRIE KOUDELA, JACEY CALLE, LILLIAN |
| 12 | ANN HAYNES, ASHLEY JOHNSON, SAM FORTE, JANDREI LIBAO, STEPHANIE |
| 13 | PARCUS, SAMATHA GOODSTEIN, ANA BRAGA, SABRINA STENDER, GRANT |
| 14 | JOHNSON, ANNIE BURTON, CRYSTAL |
| 15 | CIAMPAGLIA, KATIE VOSBURG, BRITINA DEBORD, JENNIFER MINOR, AMY ESSERY, |
| 16 | ERIN STADLER, KAREN TRAVIS, SALLY WILLIAMS, MAGGIE FERN, KATELYNN |
| 17 | STEWART, DANA COGDILL, DAVID |
| 18 | COGDILL, NATLALIE LARSON, AMANDA STUCKEY, STEPHANIE NELSON, BRIANA |
| 19 | KEMP, KATHARINE MURPHY, RACHEL KINNAMAN, RILEY PHOEBUS, DEVIN |
| 20 | SHINES, LILLIA MARBLE, JORDAN DUDLEY, |
| 21 | SHELLY KNOLL, AMBERLY WEBB, BRITTANY GARRABRANT, BRYSON |
| 22 | CURRAN, BRIANNA RAMSEY, GABRIELLE HEDGES, CAITLIN MONTGOMERY, JESSICA |
| 23 | CAMPANELLO, KEIRSTEN SMITH, CHELSEA |
| 24 | LOMMEN, CHRISTINA DAVIS, MARIAH FRAZEE-ANTARAMIAN, MIKE |
| 25 | ANTARAMIAN, BRITTANY HEATH, ANTOINETTE MASON, ALEXIS R. AJELLO, |
| 26 | SARAH ROBINSON, NATHAN HICKEY, |
| 27 | LAUREN LEGARY, ALEXIS DUNNICK, HEATHER PATRICK, YULIANA SANCHEZ, |
| 28 | CINDY MUETH, ALYSSA STONESIFER, |

**COMPLAINT**

- 2 -

EXHIBIT C
Page 35

1  SIERRA CUNNINGHAM, ROBERTA BARR,
   KIM KORYCZAN, MANDY VERRET,
2  STEPHANIE PORTER, SEAN AKERS,
   SAMANTHA AKERS, FRANKLIN BARRETT,
3  ALEXANDRA SCHWARTZ, HOLLY GRAY,
4  KASEY HAMMOND, JAIME HELGESON,
   MARIA SCHOFF, BRITTANY CALCAGNO,
5  MEGAN GRANNAN, MARLENE PLANKO,
   JAMIE MACKEY, CHRISTOPER MACKEY,
6  AMANDA J. GOODWIN, AIMEE GOLUB,
7  CIERRA SLAVENS, JENNIFER PETRANGELI,
   DARRELL JENKINS, PATRICIA RAMIREZ
8  FORNES, KIDEST HAILU, ASHLYN PIXLEY,
   CHRISTIAN SOLANO, TARA ADAMCZYK,
9  ANTON TURNER, BRIANA BIERSCHENK,
10 DONALD CARPENTER, DANIELLE ROMERO,
   BREYAUNA SHERLDON, LINDSAY HANSON,
11 NICOLE KALLIN, MAGGIE WILMOTH,
12 JIMMY VERRET JR., ALEXIA ZANCA,
   AMBER HEEREN, AMBER HIGGINS, ASHLEY
13 SUTTON, CRISTA EDWARDS, JENNIFER
   COOKSEY, KATIE SCUDDER, KIRA
14 BRANSCRUM, RAVEN MOSLEY, RHAWNIE
   PINO, VICTORIA SMOTHERS, ASHLEY
15 HUNT, DEB SIMPKINS, ELIZABETH CHOATE,
16 SUSAN BERNSTEIN,  COURTNEY BOYLE,
   EMILY MAJESKI, JOE GAROFOLO,
17 SHABANA HAQ, JEFF BROGLI, TYLER
   DAVIS, STEPHANIE OGBOGU, KRISTIN
18 LAFATA, TAMAR FORD, TANIKA WRIGHT,
19 WAYNE ABE, KARA GRIMES, HILARY
   HOWARD, NOELLE WHITE, NICOLE LARA,
20 ARDRANNA WEATHERSPOON, CHRISTINA
   SOLIZ, SYDNEY SONNIER, JULIE BARFUSS,
21 JENN LANDRY, JOSEPH AKMAKJIAN,
22 PENNY HARRISON, LAURA WATSON,
   ASHLEEN SKYE WATSON, SIMONE
23 SLAUGHTER, NICHOLAS LEVERT, MIRANDA
24 MONDESIR, ERIC WEEMS, EMILY MIRANDA,
   BYRON BUSBEE, TERRY DODD, PEERA
25 SERUMAGA, KYLA WILLIAMS, CATINA
   FRANKLIN, DOMINQUE ALLEN, NATALIE
26 REDMOND, JENNIFER NALLY, BRIANNA
   BROOKS, ELIZABETH OLATIREGUN,
27 CALVIN E. HUNTER, QUENTON LAWTON,
28 TONYA AVERY, JOHN HALL, CHANTE

**COMPLAINT**
- 3 -

EXHIBIT C
Page 36

1   LAWS, DERICK REINHARDT, TONI WRIGHT,
2   KEALEAGH J. BREWER, BRIDGETT STRONG,
    JAMIE-LYNE EMMANUEL, MELISSA
3   PENNER, BRITTANY HOLLIE, SHANAE
    PHILLIPS, JOHN MONTUORI, CRISTEL
4   JUSINO DIAZ, AMANDA L. PIPER, MICHAEL
    HARDEN, JAY GLOGOWSKI, OPHELIA
5   BOYD, CARTER BOYD, BREAONA ARD,
6   KATHLEEN LOBATO, JENNIFER MORGAN,
    BARRY MORGAN, SARA PETROSILLO,
7   AMANDA JANE GLOVER, MADISON
    BOETTCHER, MICHELLE A. GREEN, JEMIMA
8   ADEYINKA, THACIA STIRLING, MICHELLE
9   PEAT, PEGGY OLIVER, JOYCE WANG,
    MICHAEL THOMPSON, SANDY DAVIS, JODY
10  TERRY, KIARA QUINONEZ, AMANDA
    MORGAN, ASHKA PATEL, ADRIENNE
11  OWNBY, KIM RENNER, ALEXANDRA
12  BERTRAM, SUWEBAT GIWA, RANA
    DRAGON, SARAH SANNY, ROBERT M.
13  CARTER, JUDY CARTER, LOUIS KROUT,
    KARINA RAUPP, JOSEPH HURT, DIEDRA
14  HURT, JACLYN BACKER, GARRICK
15  BACKER, MIHYOUNG LEE, KATHERINA
    ANDRADE, KARINA AGUILAR, LUCIA
16  IVETTE VALDEZ, BRITTANY ANDREWS,
    ALLISON VILA, STEPHANIE FONSECA-
17  ROMERO, NIKITA YONA, TIFFANY SHIMKO,
18  EMMA THOMPSON, ROBERT HAYNES,
    MEGAN HAYNES, MARY LUTKUS,
19  ZANAYAH MOORE, HAYLEY BAHNEMANN,
    RACHAEL MINTON, EMMA D. RIVERA,
20  JORDAN SKYLAR KOLOCOTRONIS, NUSRAT
21  RAHMAN, JENNIFER CHAPPEL, ABRAHAM
    CHAPPEL, TARA BARROW, SHERRY
22  ANDERSON, CHRISTA J. FOSTER, NANCY
    MATA, AALLYHIA CRUZ, MARIANA
23  VASQUEZ, BRITTANI BROWNING, CLIFF
24  DALRYMPLE, JORDAN BUMGUARDNER,
    SHAUNA RODRIQUEZ, LISA MILLER,
25  KATHERINE BRADMILLER, AARON
    ADRIAN, MARIE MCMENAMIN, JOHN NEFF,
26  KEVIN SCHLIE, LACEY SCULLS,
27  KATHERINE ZALESKI, JEFF DOWNING,
    DOREAN DOWNING, KIM H. EFTHIMIOU-
28  AMACHER, BRYANNA VALLEJO, DANIELLE

**COMPLAINT**
- 4 -

EXHIBIT C
Page 37

1    CULVER, BRENT CULVER, DEAN KEIL,
     BRENDA BRYANT, ALEKSANDRA TORRES
2    HARRINGTON, FRANCESCO DI MARCO,
     JOECELYN DENSING, AMY KUNCE,
3    CATHERINE TAIN, CHAD HOHENBERY,
     SHANTAKA WASHINGTON, DANIELLE
4    BARRERA, TIFFANY LUNN, LIA AKIYAMA
     GARY VOLLERT, LE'ANDRA MOSLEY,
5    ALEISHA FLORES, ALYSSA KINNAIRD,
     MIKE CEOLLA, TRACEE HUFFMAN, MANAL
6    HAJJAM, BRYANNA VELLEJO, BRENT
     CULVER, DANIELLE CULVER, MIKAEL
7    FLOTT, SCHARIS WRAY AND JESSICA
8    EMSER

9
                    Plaintiffs,
10
11          vs.

12   LIVE NATION ENTERTAINMENT, INC.,
     TICKETMASTER L.L.C., and DOES 1 to 100,
13
14               Defendants.

15

16
         Plaintiffs GEORGINA CENDEJAS, JENNIFER CARRICK, JORDYN APPLEBAUM,
17
18   NICOLE WILL, DAYTON DOERING, BRIANA ABBOTT, KAYJO KARNITZ, KIM

19   KARNITZ, JENNIER BEAN, KATELYN HUNT, LAWRENCE, ASHLEY M, BECK, LISA

20   JOHNSON, PATRICK JOHNSON, OMAR CASTILLO, ASHLEY SNYDER, KRISTEN

21   JOHNSON-EDMONDS, LAURA VOHS, SIMONE COTTERELL, ERIN KAUTZ, SARA

22   BEERS, CASEY THOMAS, JONATHAN RAMIREZ, AMANDA PANOU, JOANNAH

23   CHEUNG, ABBY MARQUART, MICHAEL COVELLI, RITA WEEKS, MADISON

24   COLASANTI, FARREN SHANNON, JORDAN TAIT, ALEX GELFAND, MEGAN HENRY,

25   RUDY MONTOYA, CARMEN LI, EMELYN AUAD, BRIDGET DIMAMBRO, BOWIE

26   WANG, ELIZABETH HANSON, JACKIE SMITH, EMILY HIMES, WILLIAM PATZWALD,

27   LAUREN TAYLOR, NICOLE ANDERSON, DAN GERFEN, EDDIE ARIAS, CYDNEE

28   KLEIN, ALIYAH BRYANT, SARAH LONG, CONNER LONG, AMANDA

---

**COMPLAINT**

- 5 -

EXHIBIT C
Page 38

GIARRANTANA, STACIE WATSON, ATHENA NITSOS, NICOLE SZKOLA, AMY HAYS, ANIQUE WATSON, CELESTE FIGUEROA GUERRERO, AMANDA FAIRBANKS, CASEY SIMMONS, GAJEECA SEYARAJ, TEJAS RUPAREL, RAYAAN A JAMA, KIMBERLY KENNEY, JAMI PARENTE, KRICHELLE MILLER, ALEXIS GOURAN, THOMAS MARGIANO, DANIELA MARTINEZ, REESE GREEN, KAYLIE RODESILER, CAITLIN THOMPSON, KRISTA DOWNS, KAYLA SMITH, TORINA CALDERA, ALYSSA SKALA, HEATHER WARNER, ANA ISABEL DUARTE, SHERI GRAHAM, CHRISTIAN ROMERO, MEGAN SMITH, DANIELLE MURDOCK, ALDEN GIBSON, BRAELYNN HUTCHINSON, VINNY THOMAS, NICK MORALES, SARAH MEDINA, MARIAH GARZA, JESSICA O'DONNELL, PHEELEEN YU, LISA FLYNN, DIANA BURGESS, JENNA HECKATHORN, CARRIE KOUDELA, JACEY CALLE, LILLIAN ANN HAYNES, ASHLEY JOHNSON, SAM FORTE, JANDREI LIBAO, STEPHANIE PARCUS, SAMATHA GOODSTEIN, ANA BRAGA, SABRINA STENDER, GRANT JOHNSON, ANNIE BURTON, CRYSTAL CIAMPAGLIA, KATIE VOSBURG, BRITINA DEBORD, JENNIFER MINOR, AMY ESSERY, ERIN STADLER, KAREN TRAVIS, SALLY WILLIAMS, MAGGIE FERN, KATELYNN STEWART, DANA COGDILL, DAVID COGDILL, NATLALIE LARSON, AMANDA STUCKEY, STEPHANIE NELSON, BRIANA KEMP, KATHARINE MURPHY, RACHEL KINNAMAN, RILEY PHOEBUS, DEVIN SHINES, LILLIA MARBLE, JORDAN DUDLEY, SHELLY KNOLL, AMBERLY WEBB, BRITTANY GARRABRANT, BRYSON CURRAN, BRIANNA RAMSEY, GABRIELLE HEDGES, CAITLIN MONTGOMERY, JESSICA CAMPANELLO, KEIRSTEN SMITH, CHELSEA LOMMEN, CHRISTINA DAVIS, MARIAH FRAZEE-ANTARAMIAN, MIKE ANTARAMIAN, BRITTANY HEATH, ANTOINETTE MASON, ALEXIS R. AJELLO, SARAH ROBINSON, NATHAN HICKEY, LAUREN LEGARY, ALEXIS DUNNICK, HEATHER PATRICK, YULIANA SANCHEZ, CINDY MUETH, ALYSSA STONESIFER, SIERRA CUNNINGHAM, ROBERTA BARR, KIM KORYCZAN, MANDY VERRET, STEPHANIE PORTER, SEAN AKERS,

**COMPLAINT**
- 6 -

EXHIBIT C
Page 39

SAMANTHA AKERS, FRANKLIN BARRETT, ALEXANDRA SCHWARTZ, HOLLY GRAY, KASEY HAMMOND, JAIME HELGESON, MARIA SCHOFF, BRITTANY CALCAGNO, MEGAN GRANNAN, MARLENE PLANKO, JAMIE MACKEY, CHRISTOPER MACKEY, AMANDA J. GOODWIN, AIMEE GOLUB, CIERRA SLAVENS, JENNIFER PETRANGELI, DARRELL JENKINS, PATRICIA RAMIREZ FORNES, KIDEST HAILU, ASHLYN PIXLEY, CHRISTIAN SOLANO, TARA ADAMCZYK, ANTON TURNER, BRIANA BIERSCHENK, DONALD CARPENTER, DANIELLE ROMERO, BREYAUNA SHERLDON, LINDSAY HANSON, NICOLE KALLIN, MAGGIE WILMOTH, JIMMY VERRET JR., ALEXIA ZANCA, AMBER HEEREN, AMBER HIGGINS, ASHLEY SUTTON, CRISTA EDWARDS, JENNIFER COOKSEY, KATIE SCUDDER, KIRA BRANSCRUM, RAVEN MOSLEY, RHAWNIE PINO, VICTORIA SMOTHERS, ASHLEY HUNT, DEB SIMPKINS, ELIZABETH CHOATE, SUSAN BERNSTEIN,  COURTNEY BOYLE, EMILY MAJESKI, JOE GAROFOLO, SHABANA HAQ, JEFF BROGLI, TYLER DAVIS, STEPHANIE OGBOGU, KRISTIN LAFATA, TAMAR FORD, TANIKA WRIGHT, WAYNE ABE, KARA GRIMES, HILARY HOWARD, NOELLE WHITE, NICOLE LARA, ARDRANNA WEATHERSPOON, CHRISTINA SOLIZ, SYDNEY SONNIER, TIAM LEYVA, JULIE BARFUSS, JENN LANDRY, JOSEPH AKMAKJIAN, PENNY HARRISON, LAURA WATSON, ASHLEEN SKYE WATSON, SIMONE SLAUGHTER, NICHOLAS LEVERT, MIRANDA MONDESIR, ERIC WEEMS, EMILY MIRANDA, BYRON BUSBEE, TERRY DODD, PEERA SERUMAGA, KYLA WILLIAMS, CATINA FRANKLIN, DOMINQUE ALLEN, NATALIE REDMOND, JENNIFER NALLY, BRIANNA BROOKS, ELIZABETH OLATIREGUN, CALVIN E. HUNTER, QUENTON LAWTON, TONYA AVERY, JOHN HALL, CHANTE LAWS, DERICK REINHARDT, TONI WRIGHT, KEALEAGH J. BREWER, BRIDGETT STRONG, JAMIE-LYNE EMMANUEL, MELISSA PENNER, BRITTANY HOLLIE, SHANAE PHILLIPS, JOHN MONTUORI, CRISTEL JUSINO DIAZ, AMANDA L. PIPER, MICHAEL HARDEN, JAY GLOGOWSKI, OPHELIA

**COMPLAINT**
- 7 -

EXHIBIT C
Page 40

BOYD, CARTER BOYD, BREAONA ARD, KATHLEEN LOBATO, JENNIFER MORGAN, BARRY MORGAN, SARA PETROSILLO, AMANDA JANE GLOVER, MADISON BOETTCHER, MICHELLE A. GREEN, JEMIMA ADEYINKA, THACIA STIRLING, MICHELLE PEAT, PEGGY OLIVER, JOYCE WANG, MICHAEL THOMPSON, SANDY DAVIS, JODY TERRY, KIARA QUINONEZ, AMANDA MORGAN, ASHKA PATEL, ADRIENNE OWNBY, KIM RENNER, ALEXANDRA BERTRAM, SUWEBAT GIWA, RANA DRAGON, SARAH SANNY, ROBERT M. CARTER, JUDY CARTER, LOUIS KROUT, KARINA RAUPP, JOSEPH HURT, DIEDRA HURT, JACLYN BACKER, GARRICK BACKER, MIHYOUNG LEE, KATHERINA ANDRADE, KARINA AGUILAR, LUCIA IVETTE VALDEZ, BRITTANY ANDREWS, ALLISON VILA, STEPHANIE FONSECA-ROMERO, NIKITA YONA, TIFFANY SHIMKO, EMMA THOMPSON, ROBERT HAYNES, MEGAN HAYNES, MARY LUTKUS, ZANAYAH MOORE, HAYLEY BAHNEMANN, RACHAEL MINTON, EMMA D. RIVERA, JORDAN SKYLAR KOLOCOTRONIS, NUSRAT RAHMAN, JENNIFER CHAPPEL, ABRAHAM CHAPPEL, TARA BARROW, SHERRY ANDERSON, CHRISTA J. FOSTER, NANCY MATA, , AALLYHIA CRUZ, MARIANA VASQUEZ, BRITTANI BROWNING, CLIFF DALRYMPLE, JORDAN BUMGUARDNER, SHAUNA RODRIQUEZ, LISA MILLER, KATHERINE BRADMILLER, AARON ADRIAN, MARIE MCMENAMIN, JOHN NEFF, KEVIN SCHLIE, LACEY SCULLS, KATHERINE ZALESKI, JEFF DOWNING, DOREAN DOWNING, KIM H. EFTHIMIOU-AMACHER, BRYANNA VALLEJO, DANIELLE CULVER, BRENT CULVER, DEAN KEIL, BRENDA BRYANT, ALEKSANDRA TORRES HARRINGTON, FRANCESCO DI MARCO, JOECELYN DENSING, AMY KUNCE, CATHERINE TAIN, CHAD HOHENBERY, SHANTAKA WASHINGTON, DANIELLE BARRERA, TIFFANY LUNN, LIA AKIYAMA GARY VOLLERT, LE'ANDRA MOSLEY, ALEISHA FLORES, ALYSSA KINNAIRD, MIKE CEOLLA, TRACEE HUFFMAN, MANAL HAJJAM, BRYANNA VELLEJO, BRENT CULVER, DANIELLE CULVER, MIKAEL

---

**COMPLAINT**

- 8 -

EXHIBIT C
Page 41

FLOTT, SCHARIS WRAY, JESSICA EMSER, ("Plaintiffs") bring this lawsuit against
Defendants LIVE NATION ENTERTAINMENT, INC. and TICKETMASTER LLC
(collectively referred to as "Ticketmaster") for unlawful conduct in violation of California's
Cartwright Act and the California Unfair Competition Law, to recover *parens patriae* damages,
disgorgement, restitution, penalties, and fees and costs, as well as damages arising from breach
of contract, negligence and intentional and negligent misrepresentation.

Plaintiffs allege as follows:

## I.    INTRODUCTION

### (Applicable to all causes of action)

1.      This case concerns the anticompetitive conduct of Ticketmaster to impose higher
prices on attendees of music concert and sporting and other events in the presale, sale and resale
market.  Such misconduct has adversely affected fans of artists and teams that include Taylor
Swift, Beyonce, SUGA, NCT Dream, The Cure, Avril Lavigne, Barry Manilow, Colorado
Rockies, Janet Jackson, SZA, Bad Bunny, Billy Joel, Dallas Mavericks, Dave Mathews, Drake,
21 Savage, Ed Sheeren, Elton John, Farm Aid, Greta Van Fleet, Harry Styles, Hozier, Ileson,
Iron Maiden, Jelly Roll, Mamamoo MyCon, Morgan Wallen, Panic at the Disco, Matt Rife,
Phish, Pink, Sabrina Carpenter, Seventeen, Shinedown, Soul Coughing, Bruce Springsteen, Stray
Kids, TXT, Alice in Chains, ATG festival, Tamar Ford, Teeth of God by Sleep Token, The
Mavericks, Twice, Tyler Childers, U2 Vegas Sphere, Chrisette Michele, Mary J. Blige, NKOTB,
8 Turn and Chris Tomlin, David Gilmour, Louis Tomlinson, Twice 5th World Tour, Usher, Rufus
Du Sol, Jonas Brothers World Tour, Oasis, Niall Horan, Blackpink Born Pink, Tyler Childers,
Aespa Synk, Olivia Rodrigo, Coldplay, Alanis Morissette, Doja Cat, Lil Nas Ex, Adele, Noah
Kahan and Lil Wayne, who experienced well-publicized ticket sale disasters that occurred from
November 2022 thru 2023.  Based on information and belief, Ticketmaster has effectuated this
anticompetitive scheme by forcing fans of musicians to use Ticketmaster exclusively for presale
and sales, at prices that exceed what a competitive market would dictate.

EXHIBIT C
Page 42

2.      Ticketmaster has also forced attendees to exclusively use Ticketmaster's "Secondary Ticket Exchange" – *i.e.*, the platform Ticketmaster operates for the resale of concert and other event tickets.  Defendants have undertaken this anticompetitive conduct for the purpose of obtaining service fees and profits that they could not earn in a competitive market for secondary ticket services, referred to herein as the "Secondary Ticket Services Market." Defendants' anticompetitive behavior has substantially harmed and will continue to substantially harm the above-mentioned fans, as well as competition in the ticket sales market and the Secondary Ticket Services Market.

3.      Taylor Swift, Beyonce, SUGA, NCT Dream, The Cure, Avril Lavigne, Barry Manilow, Colorado Rockies, Janet Jackson, SZA, Bad Bunny, Billy Joel, Dallas Mavericks, Dave Mathews, Drake, 21 Savage, Ed Sheeren, Elton John, Farm Aid, Greta Van Fleet, Harry Styles, Hozier, Ileson, Iron Maiden, Jelly Roll, Mamamoo MyCon, Morgan Wallen, Panic at the Disco, Matt Rife, Phish, Pink, Sabrina Carpenter, Seventeen, Shinedown, Soul Coughing, Bruce Springsteen, Stray Kids, TXT, Alice in Chains, ATG festival, Tamar Ford, Teeth of God by Sleep Token, The Mavericks, Twice, Tyler Childers, U2 Vegas Sphere, Chrisette Michele, Mary J. Blige, NKOTB, 8 Turn and Chris Tomlin, David Gilmour, Louis Tomlinson, Twice 5th World Tour, Usher, Rufus Du Sol, Jonas Brothers World Tour, Oasis, Niall Horan, Blackpink Born Pink, Tyler Childers, Aespa Synk, Olivia Rodrigo, Coldplay, Alanis Morissette, Doja Cat, Lil Nas Ex, Adele, Noah Kahan and Lil Wayne all have contracted with Ticketmaster – which owns and/or controls, through Live Nation, most of the stadiums, arenas and similar facilities large enough to host major concerts and sporting events – for venues regarding their respective tours and other events.  Such entertainers, among the most iconic in the world, garner millions of fans; countless such fans, including Plaintiffs herein, attempted to their material harm to purchase tickets to the musical and athletic performances of these artists and teams.

4.      Based on information and belief, at all times, Ticketmaster controlled the registration and access to event tickets.  Ticketmaster announced registration for the respective

**COMPLAINT**
- 10 -

EXHIBIT C
Page 43

sales.  These announcements purported to guarantee a "leveling the playing field without racing against bots-for ticket access."  In order to access all of the sales, users had to register via their Ticketmaster Account.

5.    Based on information and belief, before Defendants' unlawful conduct caused harm in the Secondary Ticket Services Market, they had been active principally in the sale of primary or first-sale tickets, which also harmed Plaintiffs.  The term "Primary Ticket Market" refers to the market for the primary or first sale of concert tickets, and a "Primary Ticket Platform" is the platform for selling and distributing concert tickets.

6.    Based on information and belief, Ticketmaster has made agreements with virtually every stadium and entertainment venue – most of which Ticketmaster itself owns and/or controls through Live Nation – in every location of the all the above-mentioned tours and events. Such stadiums and entertainment venues are the only venues able to hold large concerts and sporting events.  Because other venues cannot hold as many people as the stadiums and venues working through Ticketmaster, musicians and other performers have no choice but to work through Ticketmaster.  And because they are forced to go through Ticketmaster, their fans must as well. This means virtually all major music concert ticket and athletic event sales in California and the United States go through Ticketmaster's Primary Ticket Platform.

7.    Based on information and belief, Ticketmaster has also expanded into the secondary ticket market.  For years, scalpers[1] have been a problem in the secondary market. Ticketmaster has stated that it has taken steps to address this issue but in reality those steps have served only to help them make additional profit from the scalped tickets.  Ticketmaster forces purchase of tickets from its site to use only Ticketmaster's Secondary Ticket Exchange for the resale of those tickets.  Ticketmaster then gets the higher fees paid by fans who have no choice but to pay for the "right" to use the Ticketmaster Secondary Ticket Exchange platform.  By doing so, it has strived and succeeded in removing competition from both the Primary and

---

[1] Ticket scalpers buy tickets to performances not to attend the performance but to resell the ticket later at an inflated price in order to make a profit.

**COMPLAINT**
- 11 -

EXHIBIT C
Page 44

Secondary markets.  Ticketmaster thus has gained inflated revenues otherwise unavailable to it. Instead of competition, Ticketmaster has conspired with stadiums to force fans to buy more expensive tickets that Ticketmaster gets additional fees from every time the tickets are resold.

8.    Ticketmaster previously violated the terms of its merger with Live Nation in 2019 after it had retaliated against concert venues that chose ticketing companies other than Ticketmaster.  Based on information and belief, Ticketmaster has continued this behavior despite increased judicial scrutiny.  This most recently has resulting in legal action by the U.S. Department of Justice against Ticketmaster alleging antitrust violations, among other things.

9.    Based on information and belief, the central components of Ticketmaster's scheme are as follows.  First, stadium venues contractually require that the resale of concert tickets be effectuated only through Ticketmaster's Secondary Ticket Exchange.  These venues have enforced and continue to enforce this requirement, while Ticketmaster continues to allow scalpers to buy up tickets over buyers who actually plan to attend the performance. Ticketmaster allows transferring tickets but buying tickets this way means a buyer needs to send a ticket reseller money and hope they aren't being scammed and get the ticket.  Because of how risky buying resold tickets outside of Ticketmaster is, Ticketmaster has left itself as the only real choice for buying tickets.

10.    For particularly popular musical and athletic performers such as those identified in this pleading, Ticketmaster engages in other activities that lure consumers, including Plaintiffs in this case, into believing that they are gaining advantageous access to tickets when in reality they get little more than an opportunity to lose more money to Ticketmaster.  These scams gained particular visibility in connection with Taylor Swift's "The Eras" tour.  As such, we refer herein frequently to the ticket sales relating to that tour, but solely by way of example of conduct in which Ticketmaster engages in connection with essentially all of the acts identified herein.[2]

---

[2] Identifying more specifically the transactions for which each Plaintiff herein sues, attached hereto as Exhibit A is a chart that lists each of the acts referred to herein for which each Plaintiff attempted to purchase tickets.

**COMPLAINT**
- 12 -

EXHIBIT C
Page 45

11.     As one such example, on November 14, 2022 and August 9, 2023, "verified" fans of the TaylorSwiftTix presale were sent a code, as well as a link via text to the cell phone associated with the Ticketmaster registration.  The text encouraged login via desktop over using a cell phone.  Based on information and belief, however, thousands of "verified" fans were not sent codes or sent codes that did not work.

12.     Based on information and belief, on November 15, 2022, and August 10, 2023, millions of "verified" fans that had received codes were unable to purchase tickets.  This was the result of the excessive distribution of codes and the addition of 14 million non-verified Ticketmaster users that were allowed access to the TaylorSwiftTix presale.

13.     Ticketmaster also offered a presale for Taylor Swift's "The Eras" Tour tickets via email for Capital One cardholders.  The link associated with this sale opened to Ticketmaster. The same registration was required.  The last six digits of the Capital One cardholder's account would be used as the code to access ticket sales on November 16, 2022, at 2:00 pm local venue time.

14.     Millions of fans waited up to eight hours and were unable to purchase tickets as a result of insufficient ticket releases and other issues similar to the prior presale.

15.     Ticketmaster had advertised a general ticket sale to Taylor Swift's "The Eras Tour" to begin on November 18, 2022.  Ticketmaster canceled the general sale on November 17, 2022, citing insufficient quantity of remaining tickets.

16.     Based on information and belief, Ticketmaster intentionally and purposefully misled ticket purchasers by allowing scalpers and bots access to TaylorSwiftTix presale.

17.     Based on information and belief, Ticketmaster intentionally and purposefully misled TaylorSwiftTix presale ticketholders by providing codes to 1.4 million "verified' fans with the option of purchasing six tickets each to three venue locations. Ticketmaster did not have enough seats to meet the demand this number of codes would require. Ticketmaster intentionally provided codes when it knew could not satisfy ticket demand.

**COMPLAINT**
- 13 -

EXHIBIT C
Page 46

18.     Based on information and belief, all of the above-mentioned artists and acts had the same or similar ticket registration requirements.  All ticket sales required registration with Ticketmaster with prompts, sign up and sign in requirements.

19.     Fans for all such ticket sales waited up to eight hours and were unable to purchase tickets as a result of negligent ticket release and issues prior to sale.

20.     Based on information and belief, Ticketmaster intentionally and knowingly partnered with Capital One for presale and advertising tickets. Ticketmaster released less than ten percent of the venues' seating capacity for this sale, resulting in millions denied access to even a single ticket.

21.     Based on information and belief, Ticketmaster intentionally and knowingly allowed scalpers and bots access to both ticket sales.

22.     Based on information and belief, Ticketmaster intentionally and knowingly scheduled a general sale of tickets knowing they would not have the quantity necessary to effectuate the sale.

23.     Based on information and belief, Ticketmaster allowed tickets to be resold during the Taylor Swift, Beyonce, SUGA, NCT Dream, The Cure, Avril Lavigne, Barry Manilow, Colorado Rockies, Janet Jackson, SZA, Bad Bunny, Billy Joel, Dallas Mavericks, Dave Mathews, Drake, 21 Savage, Ed Sheeran, Elton John, Farm Aid, Greta Van Fleet, Harry Styles, Hozier, Illenium/Tiesto, Iron Maiden, Jelly Roll, Mamamoo MyCon, Morgan Wallen, Panic at the Disco, Matt Rife, Phish, Pink, Sabrina Carpenter, Seventeen, Shinedown, Soul Coughing, Bruce Springsteen, Stray Kids, TXT, Alice in Chains, ATG festival, Tamar Ford, Teeth of God by Sleep Token, The Mavericks, Twice, Tyler Childers, U2 Vegas Sphere, Chrisette Michele, Mary J. Blige, NKOTB, 8 Turn, Chris Tomlin, David Gilmour, Louis Tomlinson, Twice 5th World Tour, Usher, Rufus Du Sol, Jonas Brothers World Tour, Oasis, Niall Horan, Blackpink Born Pink, Tyler Childers, Aespa Synk, Olivia Rodrigo, Coldplay, Alanis Morissette, Doja Cat, Lil Nas Ex, Adele, Noah Kahan and Lil Wayne presale and sale.  And Ticketmaster allowed

**COMPLAINT**
- 14 -

EXHIBIT C
Page 47

1   tickets to be resold during the presale and sales for these entertainers as if the tickets were at face

2   value negotiated by the entertainers themselves, when in fact they were double or triple the

3   negotiated price or more.  Ticketmaster was eager to allow this arrangement, as it gets paid

4   additional fees every time a ticket is resold. And, and already noted above, Ticketmaster restricts

5   official resales to its own Secondary Resale Market.

6       24.    Based on information and belief, Ticketmaster intentionally and knowingly

7   allowed presale purchasers to purchase VIP tickets knowing that the mailed portion of the VIP

8   package would be voided and never reach the fan.

9       25.    Based on information and belief, Ticketmaster intentionally and knowingly sold

10  obstructed view tickets without purchasers knowing that the tickets were obstructed.

11      26.    Based on information and belief, Ticketmaster intentionally, knowingly, and

12  oppressively required signatures on a waiver that the purchaser was not provided adequate time

13  to read, contemplate, or negotiate. This is illustrated in the millions of fans making multiple

14  failed attempts at ticket check-out to finish the purchase because tickets had been removed from

15  their basket without adequate time to check out and purchase tickets.

16      27.    Based on information and belief, Ticketmaster knowingly and intentionally

17  allowed tickets to be removed from a purchases basket/order before being allowed adequate time

18  to review waivers and releases of rights or to complete their purchases.

19      28.    Based on information and belief, Ticketmaster allowed bots and scalpers to

20  remove tickets from a fan's basket without allowing the fan adequate time to complete his or her

21  purchase.

22      29.    Based on information and belief, Ticketmaster allowed ADA-compliant seats to

23  be sold without verification of disability or need, thus depriving individuals with disabilities

24  access to ADA-compliant seats.

25      30.    Such tactics by Ticketmaster have frustrated ticket purchasers such as Plaintiffs to

26  no end.  Many have attempted to complain to Ticketmaster, the venues, politicians and even the

**COMPLAINT**
- 15 -

EXHIBIT C
Page 48

1   entertainers whose events Plaintiffs wished they could have seen at initially established prices.

2   For example, the first-named Plaintiff above, Georgina Cendejas, got so frustrated that she tried

3   to email Taylor Swift and her management.  While she does not know if her message ever got

4   through, it tells a story and expresses exasperation representative of all Plaintiffs named herein

5   and, as such, a true and correct copy thereof is attached hereto as Exhibit B.

6        31.    The policy and spirit of the California antitrust laws are to promote the free play

7   of competitive market forces and the lower prices to consumers that result.  Ticketmaster is the

8   dominant online venue for concert presale, sale, and resale in the United States, has violated the

9   policy, spirit, and letter of those laws by imposing agreements and policies at the retail and

10  wholesale level that have prevented effective price competition across a wide swath of online

11  ticket sales.

12       32.    Based on information and belief, Ticketmaster claims these agreements and

13  policies improve customer experiences and keep ticket prices down.  This is in spite of the

14  massive number of customer complaints Ticketmaster receives every day, the dramatic increase

15  in ticket prices since Ticketmaster achieved monopoly power, and the excessive service fees

16  Ticketmaster attaches that are far higher than service fees for any similar service in other

17  markets.  Ticketmaster is a monopoly that is only interested in taking every dollar it can from a

18  captive public, including Plaintiffs herein.

19       33.    California antitrust laws are concerned with protecting market competition and

20  preventing a single, dominant company from setting overly prices because of its lack of

21  competitors. Ticketmaster has allied with stadiums to entrench its dominance to harm consumers

22  in California and across the United States.

23                          **II.    JURISDICTION AND VENUE**

24       34.    This action is brought under, among other legal principles, the Cartwright Act,

25  California Business and Professions Code sections 16720, *et seq.*, and the California Unfair

---

**COMPLAINT**

- 16 -

EXHIBIT C
Page 49

Competition Law, California Business and Professions Code sections 17200, *et seq.*, for equitable, monetary, and other relief due to Ticketmaster's unlawful conduct.

35.    At all relevant times alleged in this Complaint, Ticketmaster did and continues to do substantial business in or affecting the State of California, and the injuries that have been sustained as a result of Ticketmaster's illegal conduct occurred in part in and from California where Ticketmaster has headquarters, rendering this Court's exercise of personal jurisdiction over Ticketmaster proper.

36.    Venue is proper in the County of Los Angeles because it is the location of Ticketmaster's primary place of business.

### III.    THE PARTIES

#### A. Plaintiffs

37. Georgina Cendejas resides and is domiciled in Colorado.

38. Jennifer Carrick resides and is domiciled in California.

39. Jordyn Applebaum resides and is domiciled in New York.

40. Nicole Will resides and is domiciled in California.

41. Dayton Doering resides and is domiciled in Missouri.

42. Briana Abbott resides and is domiciled in Michigan.

43. Kayjo Karnitz resides and is domiciled in Minnesota.

44. Kim Karnitz resides and is domiciled in Minnesota.

45. Jennifer Bean resides and is domiciled in New York.

46. Katelyn Hunt Lawrence resides and is domiciled in Tennessee.

47. Ashely M. Beck resides and is domiciled in Nevada.

48. Lisa Johnson resides and is domiciled in Texas.

49. Patrick Johnson lives and is domiciled in Texas.

50. Omar Castillo lives and is domiciled in Utah.

51. Ashley Snyder lives and is domiciled in California.

EXHIBIT C
Page 50

52. Kristen Johnson-Edmonds lives and is domiciled in Connecticut.

53. Laura Vohs resides and is domiciled in Colorado.

54. Simone Cotterell resides and is domiciled in Virginia.

55. Erin Kautz resides and is domiciled in Pennsylvania.

56. Sara Beers resides and is domiciled in California.

57. Casey Thomas resides and is domiciled in

58. Jonathan Ramirez resides and is domiciled in Tennessee.

59. Abby Marquart resides and is domiciled in Missouri.

60. Michael Covelli resides and is domiciled in New Jersey.

61. Rita Weeks resides and is domiciled in New York.

62. Farren Shannon resides and is domiciled in Virginia.

63. Jordan Tait resides and is domiciled in Pennsylvania.

64. Alex Gelfand resides and is domiciled in Tennessee.

65. Megan Henry resides and is domiciled in New York.

66. Rudy Montoya resides and is domiciled in California.

67. Carmen Li resides and is domiciled in Canada.

68. Emelyn Auad resides and is domiciled in Virginia.

69. Bridget DiMambro resides and is domiciled in Washington, D.C.

70. Bowie Wang resides and is domiciled in Washington, D.C.

71. Elizabeth Hanson resides and is domiciled in California.

72. Jackie Smith resides and is domiciled in Michigan.

73. Emily Himes resides and is domiciled Ohio.

74. William Patzwald resides and is domiciled in Kansas.

75. Lauren Taylor resides and is domiciled in Ohio.

76. Dan Gerfen resides and is domiciled in California.

77. Eddie Arias resides and is domiciled in California.

EXHIBIT C
Page 51

78. Cydnee Klein resides and is domiciled in Florida.

79. Aliyah Bryant resides and is domiciled in Washington.

80. Sarah Long resides and is domiciled in Indiana.

81. Connor Long resides and is domiciled in Indiana.

82. Amanda Giarratana resides and is domiciled in New Jersey.

83. Stacie Watson resides and is domiciled in West Virginia.

84. Athena Nitsos resides and is domiciled in Colorado.

85. Nicole Szkola resides and is domiciled in North Carolina.

86. Amy Hays resides and is domiciled in Tennessee.

87. Anique Watson resides and is domiciled in Texas.

88. Amanda Fairbanks resides and is domiciled in Ohio.

89. Casey Simmons resides and is domiciled in North Carolina.

90. Tejas Ruparel resides and is domiciled in Virginia.

91. Kimberly Kenney resides and is domiciled in North Carolina.

92. Jami Parente resides and is domiciled in Arizona.

93. Krichelle Miller resides and is domiciled in Ohio.

94. Alexis Gouran resides and is domiciled in Illinois.

95. Thomas Margiano resides and is domiciled in New York.

96. Daniela Martinez resides and is domiciled in Florida.

97. Reese Green resides and is domiciled in Colorado.

98. Kaylie Rodesiler resides and is domiciled in Indiana.

99. Caitlin Thompson resides and is domiciled in Michigan.

100.    Krista Downs resides and is domiciled in Michigan.

101.    Kayla Smith resides and is domiciled in Kentucky.

102.    Torina Caldera resides and is domiciled in Oregon.

103.    Alyssa Skala resides and is domiciled in Iowa.

**COMPLAINT**
- 19 -

EXHIBIT C
Page 52

104.    Heather Warner resides and is domiciled in Arizona.

105.    Ana Isabel Duarte resides and is domiciled in Texas.

106.    Sheri Graham resides and is domiciled in Connecticut.

107.    Christian Romero resides and is domiciled in Indiana.

108.    Megan Smith resides and is domiciled in Kentucky.

109.    Danielle Murdock resides and is domiciled in Maryland.

110.    Alden Gibson resides and is domiciled in New York.

111.    Braelynn Hutchinson resides and is domiciled in Connecticut.

112.    Vinny Thomas resides and is domiciled in New Jersey.

113.    Nick Morales resides and is domiciled Illinois.

114.    Sarah Medina resides and is domiciled in Arizona.

115.    Mariah Garza resides and is domiciled in Virginia.

116.    Jessica O'Donnell resides and is domiciled in Indiana.

117.    Pheeleen Yu resides and is domiciled in Canada.

118.    Lisa Flynn resides and is domiciled in Washington.

119.    Diana Burgess resides and is domiciled in Texas.

120.    Jenna Heckathorn resides and is domiciled in Indiana.

121.    Carrie Koudela resides and is domiciled in Florida.

122.    Jacey Calle resides and is domiciled Ohio.

123.    Lillian Ann Haynes resides and is domiciled in Canada.

124.    Ashley Johnson resides and is domiciled in Alabama.

125.    Sam Forte resides and is domiciled in Illinois.

126.    Jandrei Libao resides and is domiciled in Washington.

127.    Stephanie Parcus resides and is domiciled in Indiana.

128.    Samantha Goodstein resides and is domiciled in New Jersey.

129.    Ana Braga resides and is domiciled in Michigan.

**COMPLAINT**

- 20 -

EXHIBIT C
Page 53

130. Sabrina Stender resides and is domiciled in California.

131. Grant Johnson resides and is domiciled in Kentucky.

132. Annie Burton resides and is domiciled in Texas.

133. Crystal Ciampaglia resides and is domiciled in Pennsylvannia.

134. Katie Vosburg resides and is domiciled in Rhode Island.

135. Britina DeBord resides and is domiciled in Indiana.

136. Jennifer Minor resides and is domiciled in Indiana.

137. Amy Essery resides and is domiciled in Canada.

138. Erin Stadler resides and is domiciled in Wisconsin.

139. Karen Travis resides and is domiciled in Illinois.

140. Sally Williams resides and is domiciled in Indiana.

141. Maggie Fern resides and is domiciled in

142. Katelyn Stewart resides and is domiciled in Alabama.

143. Dana Cogdill resides and is domiciled inTexas.

144. David Cogdill resides and is domiciled in Texas.

145. Natalie Larson resides and is domiciled in Wisconsin.

146. Amanda Stuckey resides and is domiciled in Wisconsin.

147. Stephanie Nelson resides and is domiciled in Illinois.

148. Briana Kemp resides and is domiciled in Canada.

149. Katharine Murphy resides and is domiciled in New York.

150. Rachel Kinnaman resides and is domiciled in Indiana.

151. Riley Phoebus resides and is domiciled in Illinois.

152. Devin Shines resides and is domiciled Kentucky.

153. Lillia Marble resides and is domiciled in Indiana.

154. Jordan Dudley resides and is domiciled in North Carolina.

155. Shelly Knoll resides and is domiciled in Illinois.

**COMPLAINT**
- 21 -

EXHIBIT C
Page 54

156.    Amanda Panou resides and is domiciled in Canada.

157.    Joannah Cheung resides and is domiciled in Canada.

158.    Madison Colasanti resides and is domiciled in Canada.

159.    Nicole Anderson resides and is domiciled in Canada.

160.    Celeste Figueroa Guerrero resides and is domiciled in Canada.

161.    Gajeeca Seyaraj resides and is domiciled in Canada.

162.    Rayaan A. Jama resides and is domiciled in Canada.

163.    Amberly Webb resides and is domiciled in Ohio.

164.    Brittany Garrabrant resides and is domiciled in Ohio.

165.    Bryson Curran resides and is domiciled in Alabama.

166.    Brianna Ramsey resides and is domiciled in Indiana.

167.    Gabrielle Hedges resides and is domiciled in Virginia.

168.    Caitlin Montgomery resides and is domiciled in Illinois.

169.    Jessica Campanello resides and is domiciled in Virginia.

170.    Keirsten Smith resides and is domiciled in Georgia.

171.    Chelsea Lommen resides and is domiciled in North Dakota.

172.    Christina Davis resides and is domiciled in California.

173.    Mariah Frazee-Antaramian resides and is domiciled in California.

174.    Mike Antaramian resides and is domiciled in California.

175.    Brittany Heath resides and is domiciled in California.

176.    Antoinette Mason resides and is domiciled in California.

177.    Alexis R. Ajello resides and is domiciled in California.

178.    Sarah Robinson resides and is domiciled in Kansas.

179.    Nathan Hickey resides and is domiciled in Kansas.

180.    Lauren Legary resides and is domiciled in Florida.

181.    Alex Dunnick resides and is domiciled in Florida.

**COMPLAINT**
- 22 -

EXHIBIT C
Page 55

182.    Heather Patrick resides and is domiciled in Georgia.

183.    Yuliana Sanchez resides and is domiciled in Illinois.

184.    Cindy Mueth resides and is domiciled in Illinois.

185.    Alyssa Stonesifer resides and is domiciled in Illinois.

186.    Sierra Cunningham resides and is domiciled in Indiana.

187.    Roberta Barr resides and is domiciled in Indiana.

188.    Kim Koryczan resides and is domiciled in Indiana.

189.    Mandy Verret resides and is domiciled in Louisiana.

190.    Stephanie Porter resides and is domiciled in Massachusetts.

191.    Sean Akers resides and is domiciled in Massachusetts.

192.    Samantha Akers resides and is domiciled in Massachusetts.

193.    Franklin Barrett resides and is domiciled in Massachusetts.

194.    Alexandra Schwartz resides and is domiciled in Massachusetts.

195.    Holly Gray resides and is domiciled in Maine.

196.    Kasey Hammond resides and is domiciled in Michigan.

197.    Jaime Helgeson resides and is domiciled in Minnesota.

198.    Maria Schoff resides and is domiciled in North Carolina.

199.    Brittany Calcagno resides and is domiciled in North Carolina.

200.    Megan Grannan resides and is domiciled in New Jersey.

201.    Marlene Planko resides and is domiciled New Jersey.

202.    Jamie Mackey resides and is domiciled in New York.

203.    Christopher Mackey resides and is domiciled in New York.

204.    Amanda J. Goodwin Shenker resides and is domiciled in Ohio.

205.    Aimee Golub resides and is domiciled in Ohio.

206.    Cierra Slavens resides and is domiciled in Oklahoma.

207.    Jennifer Petrangeli resides and is domiciled in Pennsylvania.

**COMPLAINT**
- 23 -

EXHIBIT C
Page 56

1    208.    Darrell Jenkins resides and is domiciled in Tennessee.

2    209.    Patricia Ramirez Fornes resides and is domiciled in Virginia.

3    210.    Kidest Hailu resides and is domiciled in Virginia.

4    211.    Ashlyn Pixley resides and is domiciled in Washington.

5    212.    Christian Solano resides and is domiciled in Wisconsin.

6    213.    Tara Adamczyk resides and is domiciled in West Virginia.

7    214.    Anton Turner resides and is domiciled in Colorado.

8    215.    Briana Bierschenk resides and is domiciled in Missouri.

9    216.    Donald Carpenter resides and is domiciled in Nevada.

10   217.    Danielle Romero resides and is domiciled in New Mexico.

11   218.    Breyauna Sheldon resides and is domiciled in Florida.

12   219.    Lindsay Hanson resides and is domiciled in Florida.

13   220.    Nicole Kallin resides and is domiciled in Washington.

14   221.    Maggie Wilmoth resides and is domiciled in Texas.

15   222.    Brittani Browning resides and is domiciled in Texas.

16   223.    Christina Soliz resides and is domiciled in Texas.

17   224.    Sydney Sonnier resides and is domiciled in Texas.

18   225.    Tiam Leyva resides and is domiciled in Texas.

19   226.    Julie Barfuss resides and is domiciled in Utah.

20   227.    Jenn Landry resides and is domiciled in Texas.

21   228.    Joseph Akmakjian resides and is domiciled in Colorado.

22   229.    Penny Harrison resides and is domiciled in Maryland.

23   230.    Laura Watson resides and is domiciled in Florida.

24   231.    Ashleen Skye Watson resides and is domiciled in Florida.

25   232.    Jimmy Verret Jr. Resides and is domiciled in Louisiana.

26   233.    Alexis Zanca resides and is domiciled in Florida.

**COMPLAINT**
- 24 -

EXHIBIT C
Page 57

234. Amber Heeren resides and is domiciled in Illinois.

235. Amber Higgins resides and is domiciled in Illinois.

236. Ashley Sutton resides and is domiciled in Louisiana.

237. Crista Edwards resides and is domiciled in Pennsylvania.

238. Jennifer Cooksey resides and is domiciled in Louisiana.

239. Katie Scudder resides and is domiciled in Ohio.

240. Kira Branscrum resides and is domiciled in Louisiana.

241. Raven Mosley resides and is domiciled in Washington.

242. Rhawnie Pino resides and is domiciled Arizona.

243. Victoria Smothers resides and is domiciled in North Carolina.

244. Ashley Hunt resides and is domiciled in Indiana.

245. Deb Simpkins resides and is domiciled in Ohio.

246. Elizabeth Choate resides and is domiciled in Arkansas.

247. Susan Bernstein resides and is domiciled in Florida.

248. Courtney Boyle resides and is domiciled in California.

249. Emily Majeski resides and is domiciled in Illinois.

250. Joe Garofolo resides and is domiciled in New York.

251. Shabana Haq resides and is domiciled in California.

252. Jeff Brogli resides and is domiciled in Florida.

253. Tyler Davis resides and is domiciled in California.

254. Stephanie Ogbogu resides and is domiciled in California.

255. Kristin Lafata resides and is domiciled in Colorado.

256. Tamar Ford resides and is domiciled in Isreal.

257. Tanika Wright resides and is domiciled in Virginia.

258. Wayne Abe resides and is domiciled in Washington.

259. Kara Grimes resides and is domiciled in California.

**COMPLAINT**
- 25 -

EXHIBIT C
Page 58

260.    Hilary Howard resides and is domiciled in California.

261.    Noelle White resides and is domiciled in California.

262.    Nicole Lara resides and is domiciled in California.

263.    Ardranna Weatherspoon resides and is domiciled in Washington, DC.

264.    Simone Slaughter resides and is domiciled in Georgia.

265.    Nicholas Levert resides and is domiciled in Georgia.

266.    Miranda Mondesir resides and is domiciled in Georgia.

267.    Eric Weems resides and is domiciled in Georgia.

268.    Emily Miranda resides and is domiciled in Georgia.

269.    Byron Busbee resides and is domiciled in Georgia.

270.    Terry Dodd resides and is domiciled in Illinois.

271.    Peera Serumaga resides and is domiciled in Illinois.

272.    Kyla Williams resides and is domiciled in Illinois.

273.    Catina Franklin resides and is domiciled in Indiana.

274.    Dominique Allen resides and is domiciled in Michigan.

275.    Natalie Redmond resides and is domiciled in Missouri.

276.    Jennifer Nally resides and is domiciled in New Jersey.

277.    Brianna Brooks resides and is domiciled in Nevada.

278.    Elizabeth Olatiregun resides and is domiciled in Canada.

279.    Calvin E. Hunter resides and is domiciled in Pennsylvania.

280.    Quenton Lawton resides and is domiciled in South Carolina.

281.    Tonya Avery resides and is domiciled in Texas.

282.    John Hall resides and is domiciled in Texas.

283.    Chante Laws resides and is domiciled in Virginia.

284.    Derick Reinhardt resides and is domiciled in Washington.

285.    Toni Wright resides and is domiciled in Ohio.

**COMPLAINT**

- 26 -

EXHIBIT C
Page 59

286.    Kealeagh J Brewer resides and is domiciled in Canada.

287.    Bridgett Strong resides and is domiciled in Alabama.

288.    Jamie-Lyne Emmanuel resides and is domiciled in Canada.

289.    Melissa Penner resides and is domiciled in Canada.

290.    Brittany Hollie resides and is domiciled in Texas.

291.    Shenae Phillips resides and is domiciled in Texas.

292.    John Montuori resides and is domiciled in New Jersey.

293.    Cristel Jusino Diaz resides and is domiciled in New York.

294.    Amanda L. Piper resides and is domiciled in New York.

295.    Michael Harden resides and is domiciled in Texas.

296.    Jason Glogowski resides and is domiciled in New York.

297.    Ophelia Boyd resides and is domiciled in Wisconsin.

298.    Carter Boyd resides and is domiciled in Wisconsin.

299.    Breaona Ard resides and is domiciled in Texas.

300.    Kathleen Lobato resides and is domiciled in Colorado.

301.    Jennifer Morgan resides and is domiciled in California.

302.    Barry Morgan resides and is domiciled in California.

303.    Sara Petrosillo resides and is domiciled in Illinois.

304.    Amanda Jane Glover resides and is domiciled in California.

305.    Madison Boettcher resides and is domiciled in Michigan.

306.    Michelle A. Green resides and is domiciled in New York.

307.    Jemima Adeyinka resides and is domiciled in Illinois.

308.    Thacia Stirling resides and is domiciled in Washington.

309.    Michelle Peat resides and is domiciled in Kentucky.

310.    Peggy Oliver resides and is domiciled in Tennessee.

311.    Joyce Wang resides and is domiciled in Texas.

**COMPLAINT**
- 27 -

EXHIBIT C
Page 60

312.    Michael Thompson resides and is domiciled in New York.

313.    Sandy Davis resides and is domiciled in Florida.

314.    Jody Terry resides and is domiciled in Michigan.

315.    Kiara Quinonez resides and is domiciled in Arizona.

316.    Amanda Morgan resides and is domiciled in Washington D.C.

317.    Ashka Patel resides and is domiciled in Georgia.

318.    Adrienne Ownby resides and is domiciled in Virginia.

319.    Kim Renner resides and is domiciled in Ohio.

320.    Alexandra Bertram resides and is domiciled in North Carolina.

321.    Suwebat Giwa resides and is domiciled in Arizona.

322.    Rana Dragon resides and is domiciled in Illinois.

323.    Sarah Sanny resides and is domiciled in Iowa.

324.    Robert M. Carter resides and is domiciled in Kentucky.

325.    Judy Carter resides and is domiciled in Kentucky.

326.    Louis Krout resides and is domiciled in California.

327.    Karina Raupp resides and is domiciled in New Jersey.

328.    Joesph Hurt resides and is domiciled in Arizona.

329.    Diedra Hurt resides and is domiciled in Arizona.

330.    Jaclyn Backer resides and is domiciled in Arizona.

331.    Garrick Backer resides and is domiciled in Arizona.

332.    Mihyoung Lee resides and is domiciled in California.

333.    Katherina Andrade resides and is domiciled in California.

334.    Karina Aguilar resides and is domiciled in California.

335.    Lucia Ivette Valdez resides and is domiciled in California.

336.    Brittany Andrews resides and is domiciled in California.

337.    Allison Vila resides and is domiciled in Florida.

**COMPLAINT**

- 28 -

EXHIBIT C
Page 61

338.    Stephanie Fonseca-Romero resides and is domiciled in Florida.

339.    Nikita Yona resides and is domiciled in Florida.

340.    Tiffany Shimko resides and is domiciled in Indiana.

341.    Emma Thompson resides and is domiciled in Kentucky.

342.    Robert Haynes resides and is a member of Armed Forces in Europe.

343.    Megan Haynes resides and is a member of Armed Forces in Europe.

344.    Mary Lutkus resides and is domiciled in Massachusetts.

345.    Zanayah Moore resides and is domiciled in Maine.

346.    Hayley Bahnemann resides and is domiciled in Minnesota.

347.    Rachel Minton resides and is domiciled North Carolina.

348.    Emma D. Rivera resides and is domiciled in New Jersey.

349.    Jordan Skylar Kolocotronis resides and is domiciled in New York.

350.    Nusrat Rahman resides and is domiciled in New York.

351.    Jennifer Chappel resides and is domiciled in Florida.

352.    Abraham Chappel resides and is domiciled in Pennsylvania.

353.    Tara Barrow resides and is domiciled in Texas.

354.    Sherry Anderson resides and is domiciled Washington.

355.    Christa J. Foster resides and is domiciled in Texas.

356.    Nancy Mata resides and is domiciled in California.

357.    Aallyhia Cruz resides and is domiciled in Massachusetts.

358.    Mariana Vasquez resides and is domiciled in Georgia.

359.    Cliff Dalrymple resides and is domiciled in Georgia.

360.    Jordan Bumguardner resides and is domiciled in Arizona.

361.    Shauna Rodriguez resides and is domiciled in California.

362.    Lisa Miller resides and is domiciled in California.

363.    Katherine Bradmiller resides and is domiciled California.

**COMPLAINT**
- 29 -

EXHIBIT C
Page 62

364.    Aaron Adrian resides and is domiciled in California.

365.    Marie McMenamin resides and is domiciled in Georgia.

366.    John Neff resides and is domiciled in Illinois.

367.    Kevin Schlie resides and is domiciled in New Mexico.

368.    Lacey Sculls resides and is domiciled in Nevada.

369.    Katherine Zaleski resides and is domiciled in Pennsylvania.

370.    Jeff Downing resides and is domiciled in Pennsylvania.

371.    Dorean Downing resides and is domiciled in Pennsylvania.

372.    Kim H. Efthimiou-Amacher resides and is domiciled in Illinois.

373.    Bryanna Vallejo resides and is domiciled in California.

374.    Danielle Culver resides and is domiciled in Florida.

375.    Brent Culver resides and is domiciled in Florida.

376.    Dean Kiel resides and is domiciled in Arizona.

377.    Brenda Bryant resides and is domiciled in Arizona.

378.    Aleksandra Torres Harrington resides and is domiciled in Canada.

379.    Francesco Di Marco resides and is domiciled in Canada.

380.    Joecelyn Densing resides and is domiciled in California.

381.    Amy Kunce resides and is domiciled in Florida.

382.    Catherine Tain resides and is domiciled in Texas.

383.     Chad Hohenbery resides and is domiciled in Illinois.

384.    Shantaka Washington resides and is domiciled in Illinois.

385.    Danielle Barrera resides and is domiciled in Illinois.

386.    Tiffany Lunn resides and is domiciled in Maryland.

387.    Lia Akiyama resides and is domiciled in Virginia.

388.    Gary Vollert resides and is domiciled in California.

389.    Le'Andra Mosley resides and is domiciled in Illinois.

**COMPLAINT**
- 30 -

EXHIBIT C
Page 63

390.    Aleisha Flores resides and is domiciled in Delaware.

391.    Alyssa Kinnaird resides and is domiciled in Illinois.

392.    Mike Ceolla resides and is domiciled in Wisconsin.

393.    Tracee Huffman resides and is domiciled in Virginia.

394.    Manal Hajjam resides and is domiciled in New Jersey.

395.    Bryanna Vallejo resides and is domiciled in California.

396.    Brent Culver resides and is domiciled in Florida.

397.    Danielle Culver resides and is domiciled in Florida.

398.    Mikael Flott resides and is domiciled in Alabama.

399.    Scharis Wray resides and is domiciled in Alabama.

400.    Jessica Emser resides and is domiciled in Florida.

401.    Based on information and belief, all plaintiffs are adult individuals.

**B.  Defendants**

402.    Defendant LIVE NATION ENTERTAINMENT, INC. is a Delaware corporation with its principal place of business at 9348 Civic Center Drive, Beverly Hills, Calfornia 90210.

403.    Defendant TICKETMASTER L.L.C. is a wholly owned subsidiary of LIVE NATION ENTERTAINMENT, INC. (when referred to separately, "Live Nation"), and is a limited liability company organized and existing under the laws of Virginia with its principal place of business at 9348 Civic Center Drive, Beverly Hills, California 90210.

404.    Ticketmaster is the largest ticketing company and the dominant provider of Primary Ticket Platform services in the U.S. with 2014 revenues of approximately $1.55 billion. Ticketmaster, through its TicketExchange, TicketsNow, and TM+ brands, also provides Secondary Ticket Exchange services in the U.S. Ticketmaster also merged with Live Nation in 2010 to gain even greater market dominance.

405.    Ticketmaster has been the exclusive provider of Primary Ticket Platform services for concert venues for many years and is the exclusive Secondary Ticket Exchange partner for

**COMPLAINT**

- 31 -

EXHIBIT C
Page 64

most if not all of them.  As discussed more fully below, as part of the exclusive Secondary Ticket

Exchange partnership that Ticketmaster has with these concert venues, Ticketmaster is promoted

as the only "official" Secondary Ticket Exchange and refuses to allow any other Secondary

Ticket Exchange to integrate technically with Ticketmaster's Primary Ticket Platform.  In

addition, Ticketmaster is the only "authorized" channel through which Taylor Switch ticket

holders may sell or transfer their tickets.

### C. DOE defendants and co-liability

406.    Plaintiffs are unaware of the true identity, nature, and capacity of each of the

defendants designated DOES 1 through 100.  Plaintiffs are informed and believe and thereon

allege that each of these defendants is in some way responsible for the damages and injuries

alleged in the complaint.  Plaintiffs are further informed and believe and thereon allege that

DOES 1 through 100 include but are not limited to the following: various persons, firms,

corporations, organizations, and/or other business entities, that have participated as co-

conspirators in the conduct, acts, omissions, and violations alleged herein as the basis for liability

and have performed acts in furtherance of these conspiracies.

407.    At all times material to the allegations of this complaint each of the defendants

was the agent, co-conspirator or alter-ego, and in these or other capacities participated in or had

some responsibility for the acts, of each of its codefendants, including both named and DOE

defendants, and in doing the things hereinafter alleged was acting within the course and scope of

such agency and/or employment and with the permission and consent of all their co-defendants.

As such, unless expressly stated to the contrary, all references to any defendant herein shall be

deemed to include each and every other defendant, including DOES.

**COMPLAINT**
- 32 -

EXHIBIT C
Page 65

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.    FIRST CAUSE OF ACTION

### (Against Live Nation and Ticketmaster)

*Breach of Contract*

A. *Breach of Contract During the Presale*

408.    Plaintiffs reallege and incorporate by reference each and every other paragraph of this complaint as if fully set forth here.

409.    Plaintiffs entered into contracts with Ticketmaster by and since November 15, 2022, setting forth the covenants, conditions, and terms of the parties' agreement.  The material terms of the contract include, but are not limited to, the following: Ticketmaster agreed that, in exchange for Plaintiffs purchasing a significant amount of merchandise and/or in exchange for their purchase of the canceled "Lover's Fest" tickets, Plaintiffs would be entitled to participate in the presale of "The Eras" tour tickets.  Only those individuals who satisfied either of these conditions would be allowed into the presale via a code as a "verified" fan.  Plaintiffs relied upon and accepted such terms and conditions, thereby purchasing merchandise and/or accepting the benefit from the canceled "Lover's Fest."

410.    Plaintiffs have performed all obligations to Ticketmaster except those obligations Plaintiffs were prevented or excused from performing.

411.    Ticketmaster breached the Contract by failing to actually provide the proper presale it promised. It did not exclude those without codes. It did not give out codes to those who qualified. And it did not give those with codes the fair chance to get a ticket they were entitled to. Plaintiffs and Ticketmaster had an agreement leading up to the presale that made a contract and Ticketmaster violated it to Plaintiffs' detriment.

412.    Plaintiffs sustained damages proximately caused by Ticketmaster under this cause of action in the amount of thousands of dollars each.

EXHIBIT C
Page 66

*B. Breach of Contract After Ticket Purchase*

413.   Plaintiffs reallege and incorporate by reference each and every other paragraph of this complaint as if fully set forth here.

414.   Plaintiffs entered into contracts with Ticketmaster by and since November 15, 2022, setting forth the covenants, conditions, and terms of the parties' agreement.  The material terms of the contract include, but are not limited to, the following: In exchange for a stated price, a Plaintiff who completed a purchase online would receive tickets for that price.  However, in breach of that contract, ticket prices increased during Plaintiffs' purchases in breach of the contract for the purchase of such tickets at a lower stated price.

415.   Plaintiffs paid money to Ticketmaster directly or indirectly through Ticketmaster's secondary market to receive tickets.  By purchasing these tickets, Plaintiffs were buying the ability to see the Taylor Swift "The Eras" tour in a specific location and seat. Plaintiffs paid money that was good consideration for this contract.

416.   Plaintiffs performed all obligations to Ticketmaster.  They then received tickets from Ticketmaster directly or indirectly.

417.   Ticketmaster breached the contract by unjustly and unlawfully taking tickets away from certain Plaintiffs weeks and months after purchase.  Ticketmaster has given no reason why it took tickets from Plaintiffs' accounts, and many Plaintiffs have not even received a refund for their tickets.

418.   Plaintiffs sustained damages proximately caused by Ticketmaster under this cause of action in the amount of thousands of dollars each.

**COMPLAINT**
- 34 -

EXHIBIT C
Page 67

## V.  <u>SECOND CAUSE OF ACTION</u>

**(Against Live Nation and Ticketmaster)**

*Fraud*

419.    Plaintiffs reallege and incorporate by reference each and every other paragraph of this complaint as if fully set forth here.

420.    Ticketmaster made false representations, promises and statements to Plaintiffs about the presale for Taylor Swift tickets at and before the time of such presale.  More particularly, such misrepresentations and false promises included, among other things, how to and who could get "codes" and/or otherwise establish themselves as "verified" fans, how best to get tickets, and who could participate in the presale.

421.    Regarding codes, Ticketmaster made representations it knew were false and promises it had no intention of performing.  Among other things, Ticketmaster claimed that only those with codes would be able to join the presale, but millions of buyers without codes were able to get tickets. Many of those without codes were scalpers, and Ticketmaster benefited from scalped tickets as they must be resold on Ticketmaster, which gets an additional fee.

422.    One of the ways buyers such as Plaintiffs could be "verified" was by spending a certain amount of money on official Taylor Swift merchandise. Ticketmaster made out that spending enough would get a buyer a code and they would have a fair chance to get a ticket.

423.    Neither statement was true; Ticketmaster did not give everyone a code that it said was entitled to one.  It arbitrarily denied codes, even though many Plaintiffs had paid good money to qualify for a code in reliance on Ticketmaster's promises.  By misleading Plaintiffs, Ticketmaster was able to get Plaintiffs and many other hopeful ticket purchasers to buy merchandise, and Ticketmaster benefitted thereby due to its agreements with the merchandise sellers.

424.    By providing "codes" and describing how fans could become "verified," Ticketmaster led prospective purchasers, including Plaintiffs, to believe that they would have a

**COMPLAINT**
- 35 -

EXHIBIT C
Page 68

greater likelihood of acquiring tickets by obtaining a code and/or becoming verified, causing Plaintiffs to part with money in reliance on such promises and representations. Yet, Ticketmaster failed to disclose that it had sent more codes than it could accommodate with tickets.

425. Ticketmaster purported to give additional instructions on how to get tickets. Among other things, it warned buyers, including Plaintiffs, not to use their phones to purchase tickets from its site. Ticketmaster instead advised using a laptop or desktop computer. However, not only were phone users able to get tickets, they also got them ahead of those on computers.

426. Ticketmaster made similar promises and representations to buyers of the canceled Taylor Swift "Lover Fest" tour – *e.g.*, that their purchases for that prior tour would advantage them in acquiring tickets for The Eras tour. By making similar promises to these buyers, which included some Plaintiffs, Ticketmaster was able to appease any issue these buyers and Plaintiffs had with Ticketmaster's handling of the prior tour following its cancelation due to COVID-19.

427. Ticketmaster further reserved tickets for the Capital One sale, a promotion by which it caused prospective purchasers to believe that participating in that program would increase their chance of getting tickets. However, the promotion suffered many of the same issues as the presale. It did not have enough tickets to supply those attempting to purchase through the Capital One program, and did not so inform prospective purchasers before they parted with value to participate in it. Nor during the Capital One sale did Ticketmaster limit ticket sales solely to Capital One cardholders.

428. Ticketmaster made the foregoing representations and promises knowing they were false and without any intent to perform them. Ticketmaster intended to induce Plaintiffs and other buyers to rely on its false representations and promises by taking steps that inured to their detriment but to the benefit of Ticketmaster.

429. Ticketmaster knew the obstacles it would face in the Taylor Swift presale and the Capital One sale. Yet, it concealed them from prospective purchasers, including Plaintiffs. It

**COMPLAINT**
- 36 -

EXHIBIT C
Page 69

did so intending that Plaintiffs would participate in these events and part with consideration in reliance on them functioning smoothly and giving Plaintiffs an enhanced likelihood of acquiring tickets when in fact the opposite occurred, as Ticketmaster knew it would.

430.    Plaintiffs reasonably relied upon Ticketmaster's material representations and promises, which Ticketmaster made knowing them to be false and without any intent actually to perform them.  Had Plaintiffs known the true facts, or that Ticketmaster never intended to perform their promises, Plaintiffs would not have parted with the additional consideration that Ticketmaster had led them to believe would give them an advantage in acquiring Taylor Swift tickets.

431.    Plaintiffs each sustained damages proximately caused by Ticketmaster under this cause of action in the amount of thousands of dollars, which is a reasonable value.

432.    Ticketmaster made the foregoing false misrepresentations and promises intentionally and maliciously to take advantage of Plaintiffs and deprive them of their right to have chosen how to act freely based on information that Ticketmaster should have made available to them truthfully and completely.  Ticketmaster's acts and omissions as stated herein thus constitute fraud, oppression and/or malice as defined in California Civil Code section 3294, entitling Plaintiffs to recover, in addition to actual damages, punitive damages adequate in light of its net worth to make an example of and to punish Ticketmaster, in an amount to be proven at trial.

## VI.    THIRD CAUSE OF ACTION

### (Against Live Nation and Ticketmaster)

*General Negligence and Negligent Misrepresentation*

433.    Plaintiffs reallege and incorporate by reference each and every other paragraph of this complaint as if fully set forth here.

434.    As to its false representations, promises and statements made to Plaintiffs as set forth above, if and to the extent it did not know them to be false, Ticketmaster made them

**COMPLAINT**

- 37 -

EXHIBIT C
Page 70

1   without reasonable grounds to believe them true, and reasonably expecting that Plaintiffs would

2   rely on them to their detriment.

3       435.    Plaintiffs in fact did reasonably rely upon Ticketmaster's negligent

4   representations and promises.  Had Plaintiffs known the true facts, they would not have parted

5   with the additional consideration that Ticketmaster had led them to believe would give them an

6   advantage in acquiring Taylor Swift tickets.

7       436.    Defendants owed Plaintiffs a duty to operate Defendants' website in the manner

8   they told Plaintiffs it would operate.  Defendants were aware that there would be voluminous

9   traffic for Taylor Swift ticket sales, and tools exist to allow companies to handle such large

10  traffic.  These include Amazon Cloudfront and Monetate.  Defendants use these services, like

11  many other companies.  Unlike every other online seller who uses these services, who are able to

12  manage large traffic and minimize bots and scalpers, Defendants' sale was nonfunctional.

13  Defendants have not proffered a reason why they were unable to have a functioning sale when

14  they had the tools to have one. This breach was the cause of Plaintiffs' damages.  The above-

15  described acts of defendants proximately and wrongfully caused economic and noneconomic

16  harms and losses to Plaintiffs.

17

18      437.    Plaintiffs each sustained damages proximately caused by Ticketmaster under this

19  cause of action in the amount of thousands of dollars, which is a reasonable value.

20              **VII.    FOURTH CAUSE OF ACTION**

21                  **(Against all defendants)**

22                  *Antitrust Violations*

23      438.    Plaintiffs reallege and incorporate by reference each and every other paragraph of

24  this complaint as if fully set forth here.

25      439.    Ticketmaster, including in concert and collusion with event venues and its own

26  parent, Live Nation, has coordinated efforts to foreclose competition in the Primary Ticket

27  Market and the Secondary Ticket Services Market, in violation of the Cartwright Act, Cal. Bus.

28

---

**COMPLAINT**

- 38 -

EXHIBIT C
Page 71

1    & Prof. Code §§ 16700 *et seq.*  Ticketmaster has been able to accomplish this violation,

2    including with event venues, because of the individual and collective market power that Live

3    Nation and Ticketmaster wield over the sale of Taylor Swift and other major entertainers' tickets

4    through Primary Ticket Platforms.

5            440.    As set forth in greater detail below, Ticketmaster and Live Nation together

6    conduct themselves as a "trust" defined in Cal. Bus. & Prof. Code § 16720 and made illegal by §

7    16726, and involve therein third parties such as event venues that agree to participate in

8    Ticketmaster's illegal activities.  Ticketmaster requires venues, and those venues agree, to use

9    Ticketmaster's Primary Ticket Platform exclusively for the initial sale of concert tickets, and did

10   so specifically for tickets such as for Taylor Swift's The Eras tour as but one example.

11   Ticketmaster then forces ticket holders to use Ticketmaster as their exclusive provider of

12   Secondary Ticket Exchange services from which it derives additional revenue.  Ticketmaster's

13   practices have achieved and will achieve no legitimate efficiency benefits to counterbalance their

14   demonstrated anticompetitive effects, including the foreclosure of competition in the Primary

15   and Secondary Ticket Services Market and the unjust enrichment of Ticketmaster.

16

17                        **A.    <u>FIRST ANTITRUST CLAIM</u>**

18                              *Unlawful Tying*

19           441.    Plaintiffs reallege and incorporate by reference each and every other paragraph of

20   this complaint as if fully set forth here.

21           442.    Ticketmaster's conduct in foreclosing competition in the Secondary Ticket

22   Services Market for Taylor Swift and other major entertainers' tickets constitutes an illegal tying

23   arrangement in violation of Cal. Bus. & Prof. Code § 16727. A tying arrangement is a

24   conditional selling dependent on the purchase of another product or service.

25           443.    The Primary Ticket Market and the Secondary Ticket Services Market are distinct

26   and separate markets.  Taylor Swift and other touring musician and sporting event tickets sold in

27   the Primary Ticket Market and Secondary Ticket Exchange services are distinct products.

28

**COMPLAINT**
**- 39 -**

EXHIBIT C
Page 72

444.    Ticketmaster possesses substantial market power over the sale of Taylor Swift
and other touring musician and sporting event tickets in the Primary Ticket Market.  For those
seeking to purchase primary Taylor Swift tickets, there is no other option but to make these
purchases through Ticketmaster's Primary Ticket Platform, at the price set by Ticketmaster, and
on Ticketmaster's terms.

445.    Ticketmaster and all the venues part of, for example, Taylor Swift's upcoming
tour have agreed to and do mandate that all Taylor Swift tickets sold in the Primary Ticket
Market are not resold in the Secondary Ticket Services Market other than through Ticketmaster's
Secondary Ticket Exchange.  Ticketmaster has actually canceled or threatened to cancel tickets
in other cases unless ticket holders agree to use Ticketmaster exclusively for Secondary Ticket
Exchange services.  Ticketmaster has also previously revoked or threatened to revoke its
continued sale of primary tickets to season ticket holders who are identified as reselling their
primary tickets through any Secondary Ticket Exchange provider other than Ticketmaster.  Thus,
Ticketmaster is tying the sale of Taylor Swift tickets sold in the Primary Market to
Ticketmaster's Secondary Ticket Exchange services for the resale of Taylor Swift tickets.  As a
result of this tying arrangement, Taylor Swift ticket holders, who would otherwise prefer the
Secondary Ticket Exchange services of providers other than Ticketmaster, including those
offered by StubHub, have been forced to use Ticketmaster for Secondary Ticket Exchange
services.

446.    This tying arrangement – which has been reinforced and strengthened by the
exclusive marketing, promotion, and integration of Ticketmaster for Secondary Ticket Exchange
services by the concert venues – has substantially foreclosed other Secondary Ticket Exchange
providers from competing in the Secondary Ticket Services Market, thereby affecting a not
insubstantial volume of commerce.  It has harmed and will continue to harm competition in that
market by forcing Taylor Swift ticket buyers and sellers in the Secondary Ticket Services Market
to pay artificially high fees and by reducing the quantity and quality of secondary Taylor Swift

**COMPLAINT**
- 40 -

EXHIBIT C
Page 73

tickets available for sale in the Secondary Ticket Services Market and has reduced the quantity

of tickets actually sold in the Secondary Ticket Services Market.

447. As another example, Ticketmaster also created a tying arrangement regarding the

presale of tickets for Taylor Swift's "The Eras" tour in the Primary Ticket Services Market.

448. In order for potential buyers to be able to purchase tickets during the presale, they

needed to be a "verified" Taylor Swift fan. Buyers could prove their verification status by

having tickets to Taylor Swift's prior tour, "Lover Fest," which was canceled due to COVID-19.

The other way to obtain verification was for a buyer to buy a non-insignificant amount of Taylor

Swift merchandise. There was no cost-free way for a buyer to become verified, purchase of

additional, separate items was required to be "verified." Once verified, a buyer would be given a

code. This code was supposed to be the only way to buy tickets during the presale.

449. On the day of the presale, it became clear that getting tickets during the presale

would be the only real way to get tickets from the Primary Ticket Services Market. Without

engaging in the tying arrangement Ticketmaster had with the prior tour or the merchandise, it

would have been impossible for non-verified buyers to get tickets. With 1.4 million codes

allowing a buyer to get up to 6 tickets, there were not going to be any tickets left after the pre-

sale. Even if the sale of Taylor Swift tickets had gone as planned, buyers were being forced to

pay additional fees just to have the chance of buying tickets.

450. There are no legitimate business justifications or efficiencies for either of

Ticketmaster's tying arrangements that counterbalance their demonstrated anticompetitive

effects.

451. This tying arrangement constitutes a violation Cal. Bus. & Prof. Code, §§ 16720,

16727. Under California law, this is a per se violation. *People v. National Association of

Realtors* (1984) 155 Cal. App. 3d 578, 583 [202 Cal. Rptr. 243] ("Tying arrangements are illegal

per se 'whenever a party has sufficient economic power with respect to the tying product to

appreciably restrain free competition in the market for the tied product' [citations removed] and

**COMPLAINT**

- 41 -

EXHIBIT C
Page 74

1    when 'a total amount of [10 Cal. App. 4th 1361] business, substantial enough in terms of dollar-

2    volume so as not to be merely de minimis, is foreclosed to competitors by the tie. ...'").

3        452.    As a result of Ticketmaster's illegal tying arrangements, Plaintiffs have been and

4    will continue to be injured in their property in an amount not presently known with precision, but

5    which is, at minimum, thousands of dollars per Plaintiff before mandatory trebling.

6        453.    Pursuant to Bus. & Prof. Code § 16750(a), Plaintiffs have the right to recover the

7    fees of their attorneys they reasonably incur in this action, according to proof, as well as interest

8    on their actual damages at the statutory rate.

9        454.    Defendants' illegal tying arrangements violate obligations to Plaintiffs not arising

10   from contract and constitute willful misconduct that is fraudulent, oppressive and/or malicious so

11   as to entitle Plaintiffs, in addition to trebled actual damages, punitive damages to make an

12   example of and to punish Defendants in an amount to be proven at trial.

13

14                      **B.     SECOND ANTITRUST CLAIM**

15                               *Exclusive Dealings*

16       455.    Plaintiffs reallege and incorporate by reference each and every other paragraph of

17   this complaint as if fully set forth here.

18       456.    Ticketmaster's conduct has allowed it to control the supply of tickets to music

19   concerts.  In order for artists like Taylor Swift to sell to buyers wanting to see them in concert,

20   the buyers and artists must go through Ticketmaster.  This has forced both groups into exclusive

21   dealings with Ticketmaster that lessen competition as well as created and strengthened

22   Ticketmaster's monopolistic power, which violates California law. *See* Cal. Bus. & Prof. Code, §

23   16727.

24       457.    Ticketmaster has dominant, monopolistic power in the market of Primary and

25   Secondary Ticket Sales markets.  Ticketmaster currently controls over 70% of this market.

26   Ticketmaster's high market share as well as its agreements with concert venues have given it

27

28

---

**COMPLAINT**
- 42 -

EXHIBIT C
Page 75

1   extreme power.  While a small percentage of concert venues use other providers, for most

2   Californians and Americans, Ticketmaster is the only provider available.

3          458.    Ticketmaster's forced exclusive dealings, and the willing complicity therein by

4   event venues, have allowed it to charge above-market prices and excessive fees while preventing

5   competition against them.  In markets without a singular, monopolistic company, charging prices

6   and fees like Ticketmaster would be impossible.  And Ticketmaster does not do anything to

7   justify these higher costs.  Ticketmaster's service is not superior or reliable; the massive disaster

8   of the Taylor Swift presale is evidence enough of this.  Ticketmaster does not charge high prices

9   to give a better service, it charges higher prices because it has no real competition and wants to

10  take every dollar it can from buyers.

11         459.    The foreclosure of competition has led to increased prices and/or decreased output

12  and has harmed competition.

13         460.    There is no legitimate business justification or efficiency gained for these

14  exclusive dealings. All it does it take money from the hands of artists and buyers and puts it into

15  the hands of Ticketmaster, a purely anticompetitive effect that is actionable under California law.

16  *See Gianelli Distributing Co. v. Beck & Co.*, 172 Cal. App. 3d 1020 (1985).  As a result,

17  Plaintiffs have been and will continue to be injured in their property.

18         461.    Ticketmaster's antitrust violations have caused substantial economic injury to

19  Plaintiffs in an amount not presently known with precision, but which is, at minimum, thousands

20  of dollars per Plaintiff before mandatory trebling.

21         462.    Pursuant to Bus. & Prof. Code § 16750(a), Plaintiffs have the right to recover the

22  fees of their attorneys they reasonably incur in this action, according to proof, as well as interest

23  on their actual damages at the statutory rate.

24         463.    Defendants' illegal exclusive dealing arrangements violate obligations to

25  Plaintiffs not arising from contract and constitute willful misconduct that is fraudulent,

**COMPLAINT**
- 43 -

EXHIBIT C
Page 76

oppressive and/or malicious so as to entitle Plaintiffs, in addition to actual damages, punitive

damages to make an example of and to punish Defendants in an amount to be proven at trial.

### C.    THIRD ANTITRUST CLAIM

*Price Discrimination*

464.    Plaintiffs reallege and incorporate by reference each and every other paragraph of

this complaint as if fully set forth here.

465.    Ticketmaster's conduct in changing pricing during sales on its Primary Ticket

Platform and manipulation of its Secondary Ticket Services Market for Taylor Swift and other

tickets constitutes price discrimination in violation of Cal. Bus. & Prof. Code, § 17031. *See*

*Harris v. Capitol Records Distributing Corp.* (1966) 64 Cal.2d 454.  Price discrimination

involves giving different prices to different buyers the same or comparable goods in the same

location.

466.    Not all concert tickets are of equal value. Different venues may vary in general

admission prices, groups of seats vary in desirability, and some tickets contain VIP benefits.

However, seats that have about the same view of the musician, at the same venue, and with the

same amount of VIP benefits are essentially equal in value and should be at a similar price.

467.    Under Ticketmaster's dynamic pricing scheme, comparable tickets were sold at

radically different prices.  Dynamic pricing is when Ticketmaster raises the prices of tickets as

more tickets are selling, justifying it as the tickets are more in demand and, and are thus more

valuable.  Taylor Swift and other entertainers identified herein did not opt for dynamic pricing,

but Ticketmaster implemented it anyway.

468.    Ticketmaster justifies this pricing as meeting demand.  However, this argument is

nonsensical.  Ticketmaster does not raise prices when a large number of people are in a waiting

queue to buy tickets, it only raises ticket prices as fewer tickets remain.  Rather than "meeting

demand," Ticketmaster arbitrarily punishes the people that were unable to get to the front of the

line.  Those who buy tickets under dynamic pricing are paying higher prices solely because

**COMPLAINT**
- 44 -

EXHIBIT C
Page 77

Ticketmaster has created the flimsiest of excuses to justify anticompetitively taking additional money for itself.

469.    Ticketmaster's behavior has not inured to the benefit of honest buyers, but to the benefit of scalpers. Ticketmaster failed to stop millions of people without codes from buying during the presale, many of whom were scalpers.  And Ticketmaster benefits from scalpers.  Ticketmaster gets additional fees every time a ticket is resold, and Ticketmaster is the only place where tickets can be officially resold.  Ticketmaster also prevents sellers from charging below a certain price.  Ticketmaster has set up a system where scalping is not only allowed, but tacitly encouraged.  And Ticketmaster can do all of this because of its monopoly power.  As a result of Ticketmaster's behavior, Plaintiffs have been and will continue to be injured in their property.

470.    Ticketmaster's antitrust violations have caused substantial economic injury to Plaintiffs in an amount not presently known with precision, but which is, at minimum, thousands of dollars per Plaintiff before tmandatory rebling.

471.    Pursuant to Bus. & Prof. Code § 16750(a), Plaintiffs have the right to recover the fees of their attorneys they reasonably incur in this action, according to proof, as well as interest on their actual damages at the statutory rate.

472.    Defendants' illegal price discrimination arrangements violate obligations to Plaintiffs not arising from contract and constitute willful misconduct that is fraudulent, oppressive and/or malicious so as to entitle Plaintiffs, in addition to actual damages, punitive damages to make an example of and to punish Defendants in an amount to be proven at trial.

### D.      FOURTH ANTITRUST CLAIM

*Price Fixing*

473.    Plaintiffs reallege and incorporate by reference each and every other paragraph of this complaint as if fully set forth here.

474.    Ticketmaster's conduct of allying with scalpers and venues has amounted to price fixing.  Horizontal Price fixing involves competitors allying to set one price for any product,

**COMPLAINT**

- 45 -

EXHIBIT C
Page 78

commodity, or service through any agreement to raise, stabilize or otherwise affect prices.  This agreement does not need to be formalized.

475.    This agreement has allowed Ticketmaster to raise prices above what it would be able to otherwise.  Because Ticketmaster has competitors like SeatGeek charge ticket prices at the same cost as Ticketmaster, it prevents buyers from being able to find a cheaper alternative.  The only way prices could stay this high for both Ticketmaster and its competitors is through an agreement between them in violation of California antitrust laws.

476.    Ticketmaster has also committed Vertical Price Fixing.  Vertical price fixing makes any agreement between a buyer and seller regarding the price at which the buyer resells a product illegal.  Under California law, this is a per se violation of the Cartwright Act. *Mailand v. Burckle*, 20 Cal. 3d 376 (Cal. 1978).

477.    Ticketmaster has controlled the resale of tickets bought through it.  Ticketmaster forces buyers to resell on its platform.  And Ticketmaster controls the prices at which buyers can resell.  This prevents the price of tickets from falling and forces new buyers to pay higher prices under dynamic pricing.  If Ticketmaster did not do this, it might decrease the number of people willing to pay for the monopolistic priced Dynamic Pricing tickets.

478.    Ticketmaster's horizontal and vertical price fixing have harmed Plaintiffs, and as a result, Plaintiffs have been and will continue to be injured in their property.

479.    Ticketmaster's antitrust violations have caused substantial economic injury to Plaintiffs in an amount not presently known with precision, but which is, at minimum, thousands of dollars per Plaintiff before mandatory trebling.

480.    Pursuant to Bus. & Prof. Code § 16750(a), Plaintiffs have the right to recover the fees of their attorneys they reasonably incur in this action, according to proof, as well as interest on their actual damages at the statutory rate.

481.    Defendants' illegal price fixing arrangements violate obligations to Plaintiffs not arising from contract and constitute willful misconduct that is fraudulent, oppressive and/or

malicious so as to entitle Plaintiffs, in addition to actual damages, punitive damages to make an example of and to punish Defendants in an amount to be proven at trial.

### E.    FIFTH ANTITRUST CLAIM

*Group Boycotting*

482.    Plaintiffs reallege and incorporate by reference each and every other paragraph of this complaint as if fully set forth here.

483.    Ticketmaster is also beholden to the agreement it had with the Justice Department, forbidding it from threatening concert venues with losing access to its tours if those venues decided to use ticketing providers other than Ticketmaster.  This agreement has been extended to 2025.  Despite this agreement, Ticketmaster has continued to engage in group boycotting, where competitors ally together to boycott any specific entity.

484.    Ticketmaster has gathered to a group boycott with competitors like SeatGeek in its relevant market to refuse to conduct business with any competitor that does not conform to Ticketmaster's demands.  Ticketmaster does this through its monopolistic size and power as well as its collusion with concert venues.  Any competitor of Ticketmaster that does not conform to its demands will be barred from doing business with most if not all large concert venues.  This has been done to both inflate prices and prevent new competitors from entering the market, all to Ticketmaster's benefit.

485.    The Ticketmaster-led group boycotting is a violation of California law and helped keep ticket prices at an above-market price.  It also allowed Ticketmaster to force Plaintiffs to buy tickets at these inflated prices to Plaintiffs' harm, and as a result, Plaintiffs have been and will continue to be injured in their property.

486.    Ticketmaster's antitrust violations have caused substantial economic injury to Plaintiffs in an amount not presently known with precision, but which is, at minimum, thousands of dollars per Plaintiff before mandatory trebling.

487.    Pursuant to Bus. & Prof. Code § 16750(a), Plaintiffs have the right to recover the fees of their attorneys they reasonably incur in this action, according to proof, as well as interest on their actual damages at the statutory rate.

488.    Defendants' illegal group boycotting arrangements violate obligations to Plaintiffs not arising from contract and constitute willful misconduct that is fraudulent, oppressive and/or malicious so as to entitle Plaintiffs, in addition to actual damages, punitive damages to make an example of and to punish Defendants in an amount to be proven at trial.

## F.    SIXTH ANTITRUST CLAIM

*Market Division Scheme*

489.    Plaintiffs reallege and incorporate by reference each and every other paragraph of this complaint as if fully set forth here.

490.    Ticketmaster has engaged in a market division scheme, by which it has divided customers into certain regions with its competitors. This is a violation of California antitrust law.

491.    Ticketmaster has monopoly power, but it still has smaller competitors.  It has specifically carved out small territories to give to competitors like SeatGeek in an attempt to hide the level of monopolistic power and control Ticketmaster has.  In exchange for giving SeatGeek territory, Ticketmaster has made SeatGeek set price tickets at the same high price as Ticketmaster.  This allows these competitors to set high prices and not actually compete with each other.

492.    There are no pro-competitive benefits to this arrangement.  This arrangement has effectively ended competition in this market and has allowed Ticketmaster to unilaterally set prices.  Buyers have no choice in who they buy tickets from and are forced to pay monopolistic pricing set by Ticketmaster.

493.    Ticketmaster has carved up the market by territory to keep prices high.  This has allowed them to continue their monopolistic control and pricing, and as a result, Plaintiffs have been and will continue to be injured in their property.

**COMPLAINT**
- 48 -

EXHIBIT C
Page 81

494.    Ticketmaster's antitrust violations have caused substantial economic injury to Plaintiffs in an amount not presently known with precision, but which is, at minimum, thousands of dollars per Plaintiff before mandatory trebling.

495.    Pursuant to Bus. & Prof. Code § 16750(a), Plaintiffs have the right to recover the fees of their attorneys they reasonably incur in this action, according to proof, as well as interest on their actual damages at the statutory rate.

496.    Defendants' illegal market division arrangements violate obligations to Plaintiffs not arising from contract and constitute willful misconduct that is fraudulent, oppressive and/or malicious so as to entitle Plaintiffs, in addition to actual damages, punitive damages to make an example of and to punish Defendants in an amount to be proven at trial.

## VIII.   FIFTH CAUSE OF ACTION

### (Against All Defendants)

*Violation of California UCL, Bus. & Prof. Code Sections 17200* et seq.

497.    Plaintiffs reallege and incorporate by reference each and every other paragraph of this complaint as if fully set forth here.

498.    Ticketmaster has used additional, unfair practices to make it difficult for ticket holders to sell their tickets on competitive Secondary Ticket Exchanges. Ticketmaster has done this by leveraging its position as a dominant provider of Primary Ticket Platforms.

499.    As found by the Department of Justice, Ticketmaster has historically dominated Primary Ticket Platform services.  It has maintained its dominance in this business by entering into numerous multi-year, exclusive contracts with leagues, teams, and venues.  Indeed, Ticketmaster's market power in the Primary Ticket Platform services is evidenced by the high fees that it has charged and continues to charge for Primary Ticket Platform services – fees that are substantially higher than fees charged by other Primary Ticket Platform competitors.

500.    Moreover, Ticketmaster's market power in Primary Ticket Platform services is buttressed by high barriers to entry and expansion in this business, including barriers created by

**COMPLAINT**

- 49 -

EXHIBIT C
Page 82

Ticketmaster's threats to enforce its multi-year, exclusive agreements. Ticketmaster has, for example, threatened action against StubHub, a much smaller competitor, for even approaching Ticketmaster business partners with offers to sell additional, unsold ticket inventory, claiming that such overtures would constitute tortious interference with Ticketmaster's exclusive contracts. Specifically, Ticketmaster cautioned StubHub that: "It has come to our attention that StubHub is approaching Ticketmaster clients seeking to sell our client's primary tickets. As is well known in the industry . . . Ticketmaster's client ticketing contracts are generally exclusive and therefore contain contractual commitments by our clients not to sell primary tickets through any third-party." Ticketmaster has likewise imposed contractual restrictions in its Primary Ticket Platform contracts that preclude teams, leagues, and venues from distributing any of their ticket inventory via actual or potential competitors.

501.    Specifically, Ticketmaster exercised its dominance in Primary Ticket Platform services by delaying the delivery of the electronic copy of the originally purchased, primary ticket or the barcode associated with that ticket to the primary ticket purchaser. Ticketmaster has chosen to delay the delivery of PDF images or barcodes associated with original, primary tickets for numerous musical concerts until weeks or months after the ticket was purchased and only a few days before the relevant event.

502.    This practice makes it extremely difficult for a primary ticket purchaser to resell his or her ticket on competitive non-Ticketmaster Secondary Ticket Exchanges. Indeed, the delaying of the delivery of these tickets or bar codes effectively bars the reseller from selling that ticket on a competitive Secondary Ticket Exchange. This is because ticket purchasers are reluctant to purchase a ticket on a Secondary Ticket Exchange from a stranger (with no brand recognition) in the hope that the reseller will transfer the tickets weeks or months after a secondary ticket purchase occurs.

503.    Of course, Ticketmaster facilitates secondary purchases on its own Secondary Ticket Exchange even before delivering the primary ticket to the reseller: it guarantees that it

**COMPLAINT**

- 50 -

EXHIBIT C
Page 83

will directly deliver the ticket to the secondary purchaser at the designated delivery time, likely a few days before the event, if a secondary transaction is made. StubHub and other competitive Secondary Ticket Exchanges cannot provide this same direct delivery guarantee because they are barred from electronically integrating with Ticketmaster's Primary Ticket Platform.

504.    Accordingly, this Ticketmaster practice of delaying delivery of primary tickets has caused ticket holders to incur consumer harm and has caused competitive foreclosure to Secondary Ticket Exchanges.

505.    Another tactic in which Ticketmaster has engaged to leverage its dominance in Primary Ticket Platform services is its increased issuance of so-called paperless tickets. These virtual tickets allow entry to the event only upon showing at the gate picture identification and the credit card used for the purchase. Transferring or reselling these tickets is only possible through Ticketmaster's Secondary Ticket Exchange platform. According to the independent American Antitrust Institute, "[i]nstead of benefiting consumers, the trend favoring paperless tickets appears to be motivated by a desire of the dominant primary ticket provider to block out competition in the secondary ticket (resale) market."

506.    These practices are unlawful business acts or practices within the meaning of California's Unfair Competition Law, Bus/ & Prof. Code §§ 17200 *et seq.* ("UCL").

507.    Ticketmaster has also made deceptive and/or false statements intended to mislead consumers about the reliability of other Secondary Ticket Exchange, the authenticity of Taylor Swift tickets sold on other Secondary Ticket Exchange, and the ability of purchasers to obtain secondary Taylor Swift tickets from sources other than Ticketmaster.

508.    Such unlawful, unfair, and deceptive practices are ongoing and continue to date and should be enjoined by this Court.

509.    Ticketmaster's unlawful, unfair, and deceptive business practices have caused Plaintiffs to part with value in an amount not presently known with precision, but which is, at minimum, in the thousands of dollars per plaintiff, to which each is entitled to restitution.

EXHIBIT C
Page 84

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IX.    SIXTH CAUSE OF ACTION**

**(Against All Defendants)**

*Violation of 18 U.S.C. § 1962(c)*

510.    Plaintiffs reallege and incorporate by reference each and every other paragraph of this complaint as if fully set forth here.

511.    In connection with Plaintiffs' efforts to purchase tickets to concerts and sporting and other events described herein, Live Nation and Ticketmaster have conducted between themselves and with others an enterprise through a pattern of racketeering activity in violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO").  18 U.S.C. § 1962(c). The statute compels that Plaintiffs "shall recover threefold the damages [they have] sustain[ed]" as a result of such illegal activity.  18 U.S.C. § 1964(c).

512.    As corporations working together and with third parties (such as stadium venues) as described herein, Defendants have formed and constitute an "enterprise" as the RICO statute defines it.  18 U.S.C. § 1961(4).  Defendants' group qualifies as an "enterprise" because it has "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009). Defendants' enterprise has as its purpose the exercise of its market dominance to engage in anti-competitive conduct and harm consumers, including Plaintiffs, to extract profits that they could not attain in a properly competitive environment.  LiveNation and Ticketmaster exploit the relationship between themselves and with stadium venues largely owned by LiveNation to achieve the purpose of their enterprise, and have been doing so ever since the Department of Justice ill-advisedly approved their merger nearly a decade and a half ago.

513.    Regarding the element of conduct, Live Nation and Ticketmaster direct the activities of the enterprise.  Indeed, they are indispensable to it, in that their artificial inflation of ticket prices and restriction of competing sources of tickets and seats at venues controlled largely

**COMPLAINT**

- 52 -

EXHIBIT C
Page 85

by Live Nation constitute the central purpose of the enterprise, and Plaintiffs herein comprise a fraction of Defendants' millions of victims.

514.    Defendants have engaged in a pattern of racketeering activity by having on multiple occasions over many years, including to today, intentionally deprived consumers, including Plaintiffs, of money or property by means of false or fraudulent representations and promises made, among other means, by wire so as to constitute a prohibited act under the statute, 18 U.S.C. § 1961(1).  Examples of the numerous misrepresentations and false promises by Ticketmaster, as directed and participated in by its owner, LiveNation, to get consumers, including Plaintiffs, to part with more money than they are led to believe, and well exceeding the value of the products and services they receive, appear throughout this pleading.

515.    As a direct and proximate result of Defendants' actions in violation of RICO, Plaintiffs have suffered damages in the amount of thousands of dollars each, before mandatory trebling under 18 U.S.C. § 1964(c).  In addition, also pursuant to § 1964(c), Plaintiffs have the right to recover the fees of their attorneys they reasonably incur in this action.

## X.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter judgment against Defendants as follows:

1. On the First Cause of Action:

   a.  For damages according to proof, in amounts reaching thousands of dollars per plaintiff.

2. On the Second Cause of Action:

   a.  For damages according to proof, in amounts reaching thousands of dollars per plaintiff; and

   b.  For punitive damages adequate in light of Defendants' adequate net worth to make an example of and to punish them, in an amount to be proven at trial.

3. On the Third Cause of Action:

   a.  For damages according to proof, in amounts reaching thousands of dollars per plaintiff;

**COMPLAINT**

- 53 -

EXHIBIT C
Page 86

4.   On the Fourth Cause of Action:

   a.   For damages for economic injuries caused to Plaintiffs, according to proof, in amounts reaching thousands of dollars per plaintiff;

   b.   For trebling of such damages;

   c.   Pursuant to Bus. & Prof. Code § 16750(a), for interest on actual damages at the statutory rate;

   d.   For attorneys' fees reasonably incurred by Plaintiffs herein, in an amount subject to proof;

   e.   For injunctive relief prohibiting further acts by Defendants in restraint of trade, including such mandatory injunctions as may reasonably be necessary to restore and preserve fair competition, and by disgorging ill-gotten gains arising from its anticompetitive acts; according to proof; and

   f.   For punitive damages adequate in light of Defendants' net worth adequate to make an example of and to punish them, in an amount to be proven at trial.

5.   On the Fifth Cause of Action:

   a.   For restitution to Plaintiffs, according to proof, in amounts reaching thousands of dollars per plaintiff; and

   b.   For injunctive relief prohibiting further unlawful, unfair or fraudulent business acts or practices by Defendants, according to proof.

6.   On the Sixth Cause of Action:

   a.   For damages to Plaintiffs, according to proof, in amounts reaching thousands of dollars per plaintiff;

   b.   For mandatory trebling of such damages; and

   c.   For attorneys' fees reasonably incurred by Plaintiffs herein, in an amount subject to proof.

**COMPLAINT**

- 54 -

EXHIBIT C
Page 87

7.  <u>On All Causes of Action</u>:

   a.  For costs of suit; and

   b.  For such other and further relief as the Court may deem just and proper.


Dated: November 14, 2024         GENGA & ASSOCIATES, P.C.


                         /s/ John Genga

By:_____ __

                   John M. Genga
Attorneys for Plaintiffs
GEORGINA CENDEJAS, *et al.*

**COMPLAINT**
- 55 -

EXHIBIT C
Page 88

1

## DEMAND FOR JURY TRIAL

2

Plaintiffs hereby demand trial by jury on all issues so triable.

3

4
Dated: November 14, 2024          GENGA & ASSOCIATES, P.C.

5

6
                                        /s/ John Genga

7
                              By:_____   __

8
                                     John M. Genga
                              Attorneys for Plaintiffs

9
                              GEORGINA CENDEJAS, *et al*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COMPLAINT
- 56 -

EXHIBIT C
Page 89

# Exhibit A

EXHIBIT C
Page 90

| | |
|---|---|
| Georgina Cendejas | Taylor Swift |
| Jennifer Carrick | Taylor Swift |
| Jordyn Applebaum | Taylor Swift |
| Nicole Will | Taylor Swift |
| Dayton Doering | Taylor Swift |
| Briana Abbott | Taylor Swift |
| Kayjo Karnitz | Taylor Swift |
| Kim Karnitz | Taylor Swift |
| Jennifer Bean | Taylor Swift |
| Katelyn Hunt Lawrence | Taylor Swift |
| Ashley M. Beck | Taylor Swift |
| Lisa Johnson | Taylor Swift |
| Patrick Johnson | Taylor Swift |
| Omar Castillo | Taylor Swift; Sabrina Carpenter, Olivia Rodrigo |
| Ashley Snyder | Taylor Swift |
| Kristen Johnson-Edmonds | The Cure |
| Lauren Vohs | Taylor Swift |
| Simone Cotterell | Taylor Swift |
| Erin Kautz | Taylor Swift |
| Sara Beers | Taylor Swift |
| Casey Thomas | Taylor Swift |
| Jonathan Ramirez | Adele |
| Abby Marquart | Taylor Swift |
| Michael Covelli | Taylor Swift |
| Rita Weeks | Taylor Swift |
| Farren Shannon | Taylor Swift |
| Jordan Tait | Taylor Swift |
| Alex Gelfand | Taylor Swift |
| Megan Henry | Taylor Swift |
| Rudy Montoya | Taylor Swift |
| Carmen Li | Taylor Swift; Olivia Rodrigo; Coldplay; Ed Sheeran |
| Emelyn Auad | Taylor Swift |
| Bridget DiMambro | Taylor Swift |
| Bowie Wang | Taylor Swift; SZA, Olivia Rodrigo; 21 Savage, Doja Cat, Lil Nas X, Noah Kahan, Lil Wayne |

**Exhibit A, Page 1 of 11**

EXHIBIT C
Page 91

| Elizabeth Hanson | Taylor Swift |
|---|---|
| Jackie Smith | Taylor Swift; Olivia Rodrigo |
| Emily Himes | Taylor Swift |
| William Patzwald | Taylor Swift; Olivia Rodrigo; Beyoncé; Ed Sheeran; Pink; Bad Bunny; Drake; Sabrina Carpenter; Mariah Carey |
| Lauren Taylor | Taylor Swift |
| Dan Gerfen | Taylor Swift |
| Eddie Arias | Taylor Swift |
| Cydnee Klein | Taylor Swift |
| Aliyah Bryant | Taylor Swift |
| Sarah Long | Taylor Swift |
| Conner Long | Taylor Swift |
| Amanda Giarratana | Taylor Swift |
| Stacie Watson | Taylor Swift; Sabrina Carpenter |
| Athena Nitsos | Taylor Swift |
| Nicole Szkola | Taylor Swift |
| Amy Hays | Taylor Swift |
| Anique Watson | Taylor Swift |
| Amanda Fairbanks | Taylor Swift |
| Casey Simmons | Taylor Swift |
| Tejas Ruparel | Phish |
| Kimberly Kenney | The Cure |
| Jami Parente | The Cure |
| Krichelle Miller | Taylor Swift |
| Alexis Gouran | Taylor Swift |
| Thomas Margiano | Taylor Swift |
| Daniela Martinez | Taylor Swift |
| Reese Green | Taylor Swift |
| Kaylie Rodesiler | Taylor Swift, Morgan Wallen, Olivia Rodrigo, SZA |
| Caitlin Thompson | Taylor Swift |
| Krista Downs | Taylor Swift |
| Kayla Smith | Taylor Swift |
| Torina Caldera | Taylor Swift |
| Alyssa Skala | Taylor Swift; Olivia Rodrigo |
| Heather Warner | Taylor Swift |

**Exhibit A, Page 2 of 11**

EXHIBIT C
Page 92

| | |
|---|---|
| Ana Isabel Duarte | Taylor Swift |
| Sheri Graham | Taylor Swift |
| Christian Romero | Taylor Swift |
| Megan Smith | Taylor Swift |
| Danielle Murdock | Taylor Swift |
| Alden Gibson | Taylor Swift |
| Braelynn Hutchinson | Taylor Swift |
| Vinny Thomas | Taylor Swift |
| Nick Morales | Taylor Swift |
| Sarah Medina | Taylor Swift |
| Mariah Garza | Taylor Swift |
| Jessica O'Donnell | Taylor Swift; Coldplay |
| Pheleen Yu | Taylor Swift; Beyoncé |
| Lisa Flynn | Taylor Swift |
| Diana Burgess | Taylor Swift |
| Jenna Heckathorn | Taylor Swift |
| Carrie Koudela | Taylor Swift |
| Jacey Calle | Taylor Swift |
| Lillian Ann Haynes | Taylor Swift |
| Ashley Johnson | Taylor Swift |
| Sam Forte | Taylor Swift |
| Jandrei Libao | Taylor Swift |
| Stephanie Parcus | Taylor Swift |
| Samantha Goodstein | Taylor Swift |
| Ana Braga | Taylor Swift |
| Sabrina Stender | Taylor Swift |
| Grant Johnson | Taylor Swift |
| Annie Burton | Taylor Swift |
| Crystal Ciampaglia | Taylor Swift |
| Katie Vosburg | Taylor Swift |
| Britina DeBord | Taylor Swift |
| Jennifer Minor | Taylor Swift |
| Amy Essery | Taylor Swift; Olivia Rodrigo |
| Erin Stadler | Taylor Swift |
| Karen Travis | Taylor Swift; NKOTB; Oasis |
| Sally Williams | Taylor Swift |
| Maggie Fern | Taylor Swift |
| Katelynn Stewart | Taylor Swift |

**Exhibit A, Page 3 of 11**

EXHIBIT C
Page 93

| | |
|---|---|
| Dana Cogdill | Taylor Swift |
| David Cogdill | Taylor Swift |
| Natalie Larson | Taylor Swift |
| Amanda Stuckey | Taylor Swift |
| Stephanie Nelson | Taylor Swift |
| Briana Kemp | Taylor Swift |
| Katherine Murphy | Taylor Swift |
| Rachel Kinnaman | Taylor Swift |
| Riley Phoebus | Taylor Swift |
| Devin Shines | Taylor Swift |
| Lillia Marble | Taylor Swift |
| Jordan Dudley | Taylor Swift |
| Shelly Knoll | Taylor Swift |
| Amanda Panou | Taylor Swift; Bruce Springsteen; Alanis Morissette |
| Joannah Cheung | Taylor Swift |
| Madison Colasanti | Taylor Swift; Sabrina Carpenter, Olivia Rodrigo; Hozier |
| Nicole Anderson | Taylor Swift |
| Celeste Figueroa Guerrero | Taylor Swift |
| Gajeeca Seyaraj | Taylor Swift |
| Rayaan A. Jama | The Cure |
| Amberly Webb | Taylor Swift |
| Brittany Garrabrant | Taylor Swift |
| Bryson Curran | Taylor Swift |
| Brianna Ramsey | Taylor Swift |
| Gabrielle Hedges | Taylor Swift |
| Caitlin Montgomery | Taylor Swift |
| Jessica Campanello | Taylor Swift |
| Keirstyn Smith | Taylor Swift |
| Chelsea Lommen | Taylor Swift |
| Christina Davis | NKOTB |
| Mariah Frazee-Antaramian | Taylor Swift |
| Mike Antaramian | Taylor Swift |
| Brittany Heath | Taylor Swift |

**Exhibit A, Page 4 of 11**

EXHIBIT C
Page 94

| | |
|---|---|
| Antoinette Mason | Taylor Swift |
| Alexis R. Ajello | Taylor Swift |
| Sarah Robinson | Taylor Swift |
| Nathan Hickey | Taylor Swift |
| Lauren Legary | Taylor Swift |
| Alexis Dunnick | Taylor Swift |
| Heather Patrick | Taylor Swift |
| Yuliana Sanchez | Taylor Swift |
| Cindy Mueth | Taylor Swift |
| Alyssa Stonesifer | Taylor Swift |
| Sierra Cunningham | Taylor Swift |
| Roberta Barr | Taylor Swift |
| Kim Koryczan | Taylor Swift |
| Mandy Verret | Taylor Swift |
| Stephanie Porter | Taylor Swift |
| Sean Akers | Taylor Swift |
| Samantha Akers | Taylor Swift |
| Franklin Barrett | Taylor Swift |
| Alexandra Schwartz | Taylor Swift |
| Holly Gray | Taylor Swift |
| Kasey Hammond | Taylor Swift |
| Jaime Helgeson | Taylor Swift |
| Maria Schoff | Taylor Swift |
| Brittany Calcagno | Taylor Swift |
| Megan Grannan | Taylor Swift |
| Marlene Planko | Taylor Swift |
| Jamie Mackey | Taylor Swift |
| Christopher Mackey | Taylor Swift |
| Amanda J. Goodwin Shenker | Taylor Swift |
| Aimee Golub | Taylor Swift |
| Cierra Slavens | Taylor Swift |
| Jennifer Petrangeli | Taylor Swift |
| Darrell Jenkins | Taylor Swift |
| Patricia Ramirez Fornes | Taylor Swift |
| Kidest Hailu | Taylor Swift |
| Ashlyn Pixley | Taylor Swift |
| Christian Solano | Taylor Swift |
| Tara Adamczyk | Taylor Swift |

**Exhibit A, Page 5 of 11**

EXHIBIT C
Page 95

| | |
|---|---|
| Anton Turner | Taylor Swift |
| Briana Bierschenk | Taylor Swift |
| Donald Carpenter | Taylor Swift; ATG Festival |
| Danielle Romero | Taylor Swift |
| Breyauna Sheldon | Taylor Swift |
| Lindsay Hanson | Taylor Swift |
| Nicole Kallin | Beyoncé; Taylor Swift |
| Maggie Wilmoth | Taylor Swift |
| Brittani Browning | Taylor Swift |
| Christina Soliz | Taylor Swift; Drake |
| Sydney Sonnier | Taylor Swift |
| Tiam Leyva | Taylor Swift |
| Julie Barfuss | Taylor Swift |
| Jenn Landry | Taylor Swift |
| Joseph Akmakjian | Taylor Swift |
| Penny Harrison | Taylor Swift |
| Laura Watson | Taylor Swift |
| Ashleen Skye Watson | Taylor Swift |
| Jimmy Verret Jr. | Taylor Swift |
| Alexis Zanca | Taylor Swift; Olivia Rodrigo |
| Amber Heeren | Taylor Swift |
| Amber Higgins | Taylor Swift |
| Ashley Sutton | Taylor Swift |
| Crista Edwards | Taylor Swift |
| Jennifer Cooksey | Taylor Swift |
| Katie Scudder | Taylor Swift |
| Kira Branscum | Taylor Swift |
| Raven Mosley | Taylor Swift |
| Rhawnie Pino | Taylor Swift |
| Victoria Smothers | Taylor Swift |
| Ashley Hunt | Taylor Swift; Morgan Wallen |
| Deb Simpkins | Taylor Swift |
| Elizabeth Choate | Taylor Swift |
| Susan Bernstein | Taylor Swift |
| Courtney Boyle | Taylor Swift; Jonas Brothers; Oasis |
| Emily Majeski | Taylor Swift |
| Joe Garofolo | Jack White |

**Exhibit A, Page 6 of 11**

EXHIBIT C
Page 96

| Shabana Haq | Avril Lavigne |
|---|---|
| Jeffrey Brogli | Barry Manilow; Colorado Rockies |
| Tyler Davis | Beyoncé |
| Stephanie Ogbogu | Beyoncé |
| Kristin Lafata | Beyoncé |
| Tamar Ford | Beyoncé |
| Tanika Wright | Beyoncé |
| Kara Grimes | Beyoncé |
| Wayne Abe | Beyonce |
| Hilary Howard | Beyoncé |
| Noelle White | Beyoncé |
| Nicole Lara | Beyoncé |
| Ardranna Weatherspoon | Beyoncé |
| Simone Slaughter | Beyoncé |
| Nicholas Levert | Beyoncé |
| Miranda Mondesir | Beyoncé |
| Eric Weems | Beyoncé |
| Emily Miranda | Beyoncé |
| Byron Busbeee | Beyoncé |
| Terry Dodd | Beyoncé |
| Peera Serumaga | Beyoncé |
| Kyla Williams | Beyoncé |
| Catina Franklin | Beyoncé |
| Dominique Allen | Beyoncé |
| Natalie Redmond | Beyoncé |
| Jennifer  Nally | Beyoncé |
| Brianna Brooks | Beyoncé |
| Elizabeth Olatiregun | Beyoncé |
| Calvin E. Hunter | Beyoncé |
| Quenton Lawton | Beyoncé |
| Tonya Avery | Beyoncé |
| John Hall | Beyoncé |
| Chante Laws | Beyoncé |
| Derick Reinhardt | Beyoncé |
| Toni Wright | Beyoncé |
| Kealeagh J Brewer | Beyoncé |
| Bridgett Strong | Beyoncé |
| Jamie-Lyne Emmanuel | Beyoncé |

**Exhibit A, Page 7 of 11**

EXHIBIT C
Page 97

| Melissa Penner | Beyoncé; Taylor Swift |
| Brittany Hollie | Beyoncé; Janet Jackson |
| Shenae Phillips | Beyoncé; SZA |
| John Montuori | Taylor Swift; Jonas Brothers |
| Cristel Jusino Díaz | Beyoncé; Taylor Swift; Bad Bunny |
| Amanda L. Piper | Billy Joel & Stevie Nicks |
| Michael Harden | Dallas Mavericks |
| Jay Glogowski | Dave Mathews Band |
| Ophelia Boyd | Drake |
| Carter Boyd | Drake |
| Breaona Ard | Drake; 21 Savage |
| Kathleen Lobato | Ed Sheeran |
| Jennifer Morgan | Elton John |
| Barry Morgan | Elton John |
| Sara Petrosillo | Farm Aid |
| Amanda Jane Glover | Farm Aid |
| Madison Boettcher | Greta Van Fleet |
| Michelle A. Green | Harry Styles |
| Jemima Adeyinka | Hozier |
| Thacia Stirling | Illenium & Tiesto |
| Michelle Peat | Iron Maiden |
| Peggy Oliver | Jelly Roll |
| Joyce Wang | Mamamoo |
| Michael Thompson | Mariah Carey |
| Sandy Davis | Morgan Wallen |
| Jody Terry | multiple |
| Kiara Quinonez | NCT Dream |
| Amanda Morgan | NCT Dream |
| Ashka Patel | NCT Dream |
| Adrienne Ownby | NCT Dream |
| Kim Renner | Taylor Swift; Matt Rife; Panic At the Disco |
| Alexandra Bertram | Phish |
| Suwebat Giwa | Pink |
| Hannah Field | Taylor Swift |
| Rana Dragon | Sabrina Carpenter |

**Exhibit A, Page 8 of 11**

EXHIBIT C
Page 98

| | |
|---|---|
| Sarah Sanny | Seventeen |
| Robert M. Carter | Shinedown |
| Judy Carter | Shinedown |
| Louis Krout | Soul Coughing |
| Karina Raupp | Bruce Springsteen |
| Joseph Hurt | SUGA \| Agust D |
| Mary Lutkus | SUGA \| Agust D |
| Diedra Hurt | SUGA \| Agust D |
| Jaclyn Backer | SUGA \| Agust D |
| Garrick Backer | SUGA \| Agust D |
| Mihyoung Lee | SUGA \| Agust D |
| Katherina Andrade | SUGA \| Agust D |
| Karina Aguilar | SUGA \| Agust D |
| Lucia Ivette Valdez | SUGA \| Agust D |
| Brittany Andrews | SUGA \| Agust D |
| Allison Vila | SUGA \| Agust D |
| Stephanie Fonseca-Romero | SUGA \| Agust D |
| Nikita Yona | SUGA \| Agust D |
| Tiffany Shimko | SUGA \| Agust D |
| Emma Thompson | SUGA \| Agust D |
| Robert Haynes | SUGA \| Agust D |
| Megan Haynes | SUGA \| Agust D |
| Zanayah Moore | SUGA \| Agust D |
| Hayley Bahnemann | SUGA \| Agust D |
| Aallyhia Cruz | SZA |
| Rachel Minton | SUGA \| Agust D |
| Emma D. Rivera | SUGA \| Agust D |
| Jordan Skylar Kolocotronis | SUGA \| Agust D; NCT Dream |
| Nusrat Rahman | SUGA \| Agust D |
| Jennifer Chappell | SUGA \| Agust D; Taylor Swift |
| Abraham Chappell | SUGA \| Agust D |
| Tara Barrow | SUGA \| Agust D |
| Sherry Anderson | SUGA \| Agust D |
| Christa J Foster | SUGA \| Agust D |
| Nancy Mata | SUGA \| Agust D; Stray Kids; Together X Tomorrow |

**Exhibit A, Page 9 of 11**

EXHIBIT C
Page 99

| | |
|---|---|
| Aallyhia Cruz | SZA |
| Mariana Vasquez | The Cure; My Chemical Romance |
| Cliff Dalrymple | Sleep Token |
| Jordan Bumguardner | The Cure |
| Shauna Rodriguez | The Cure |
| Lisa Miller | The Cure |
| Katherine Bradmiller | The Cure |
| Aaron Adrian | The Cure |
| Marie McMenamin | The Cure |
| John Neff | The Cure |
| Kevin Schlie | The Cure |
| Lacey Sculls | The Cure |
| Katherine Zaleski | The Cure |
| Jeff Downing | The Cure |
| Dorean Downing | The Cure |
| Kim H. Efthimiou-Amacher | The Mavericks |
| Dean Kiel | U2 Vegas Sphere |
| Brenda Bryant | U2 Vegas Sphere |
| Aleksandra Torres Harrington | U2 Vegas Sphere |
| Francesco Di Marco | U2 Vegas Sphere |
| Joecelyn Densing | SUGA \| Agust D |
| Amy Kunce | Taylor Swift |
| Catherine Tain | Taylor Swift |
| Chad Hohenbery | multiple |
| Shantaka Washington | Eric Roberson and Chrisette Michele |
| Danielle Barrera | Mary J. Blige |
| Tiffany Lunn | NKOTB |
| Lia Akiyama | 8Turn |
| Gary Vollert | Chris Tomlin |
| Le'Andra Mosley | Seventeen |
| Aleisha Flores | Seventeen; SUGA \| Agust D |
| Alyssa Kinnaird | Ateez |
| Mike Ceolla | David Gilmour |
| Tracee Huffman | Louis Tomlinson; Niall Horan |

**Exhibit A, Page 10 of 11**

EXHIBIT C
Page 100

| Manal Hajjam | Stray Kids; Blackpink; Aespa |
|---|---|
| Bryanna Vallejo | TWICE |
| Brent Culver | Morgan Wallen; Tyler Childers |
| Danielle Culver | Morgan Wallen; Tyler Childers |
| Mikael Flott | Usher |
| Scharis Wary | Beyoncé |
| Jessica M Emser | Rüfüs Du Sol |

**Exhibit A, Page 11 of 11**

EXHIBIT C
Page 101

# Exhibit B

EXHIBIT C
Page 102

Good afternoon I am not sure if you will be interested but I  figured I tried anyway. My name is Georgina Cendejas and I found your name online regarding the several lawsuits that have been opened against ticket master. This is the copy of the email I tried sending Taylor Swift and her management team regarding my horrible experience with ticket master. I wanted to share this with you and see if you are interested on hearing my story

Thanks for your time

Georgina Cendejas


My niece was about 9 years old when she first began listening to your music. Granted at the time she wasn't very close to many friends, she was bullied at school. Michelle has always been very down to earth and always enjoyed her own company rather than having a group of friends around her. That led to a huge rough time of bullying and not fitting around her peers. Yet she was perfectly happy being herself and listening to your music. She was the one who got me to listen to you to begin with, and we both built a connection through your music, I became her best friend and she became mine. At the time this was happening it was right at the midst of the pandemic and there weren't any future concert tours, but Michelle and l had decided we were gonna go see you no matter what it took. Almost five years later you announced your first tour after the pandemic "The Eras Tour" and Michelle quickly became excited, beginning to plan her outfit and make up style, it was at that time her dream to go see you. She was not 13 and very connected in and in tune with your music. In fact a few years prior we had decided "Long Live" was our song, it identify our relationship. Michelle and l never had a typical aunt-niece relationship, we were actual best friends, any trouble we had, any disappointments we went through we faced them together, so Long Live was our song because you know " I had the time of my life fighting dragons with you" . I had promised myself l will take her to see you no matter what it took. I registered for tickets pre sale, I signed through the verified fan process and l was ager for the tickets sale to being in. But in November 15th l was faced with the biggest disappointment in history. The site crashed leading many of us to never be able to purchase a ticket. After of almost 10 hours waiting on the queue , I was told I didn't get tickets and the whole event was sold out. I live on Colorado l was trying to buy tickets for July 14-15 in Denver , Colorado. But the event quickly sold out. I was sad and disappointed but I didn't want to give up, l was going to take my niece to go see you whatever it took. I tried to buy tickets in any other state , anywhere else that l could take her I will no matter what the price was. But there were no tickets for any other stadium anywhere in the USA left to buy. After talking to my sister about the fiasco with Ticket master we both decided we will still try to take Michelle even if it was through a second party seller. Our excitement quickly turn to frustration and then anger when we realized tickets were being sold for 10-20 times from their actual original revenue price. That meant that tickets were being sold for 3-4K for nose bleeding seats. How is it possible that making a teenagers dream come through was worth almost eight thousand dollars and she would not be able to see you from close. The day of the concert quickly got close and even though we still were not able to get tickets , however we still took Michelle to the Empowerfield Stadium . The first night of the concert we got dressed and ready hoping we were able to find last minute tickets , but we had no luck, than only made Michelle's dis's appointment bigger. So I went home and l spend the entire night up going through every single website, social media platform with the hope of still being able to find tickets. Running into hundreds of scammers which attempt to sell fake tickets. I went into work at four the morning without sleeping anything the entire night , promising to myself l will take Michelle to see you no matter what it took. My sister felt the same way she was going to make her daughters dream come through , the

**Exhibit B, Page 1 of 3**

EXHIBIT C
Page 103

second night of the concert she decided she will buy the reseller tickets no matter how much they were and make Michelle's dream come through. We were able to find 2 tickets for 4K, through HubStub, a part of me thought it was insane to have to spend that much money to a concert that will only last a few hours but my sister said she didn't care even if she had to indebted herself with credit cards for the rest of her life she will take Michelle to the concert. She bought the tickets, and she told Michelle she will go see you, the tickets she had bought were supposed to be in the lower bowl so even if it was four thousand dollars she was gonna see you from very close so we both agreed that we will pay the tickets back together towards the credit card. Michelle was over the moon and screaming with joy because she was finally gonna see you. We both dressed up Reputation Era because that's hour favorite album and we headed to the stadium deciding that we will worry about how we will pay the tickets later. I never seen Michelle so happy, we played your music the entire car ride, and as we were driving to the stadium we received an email from StubHub saying sorry but we canceled your tickets. We were shocked and we thought it was an error when we went back to the website the tickets were still there an available so we bought them again , summing a total of 8k to my sisters credit card and we decided to worry about the first tickets later. Just as we arrived to the stadium we received a second email saying the same thing our tickets had been canceled. We called StubHub directly and the credit card company, hoping it wasn't an error on my sister's credit card provider. The bank told her there were no issues with her credit card and the merchant simply decided to cancel our transaction. We spend one hour and forty five minutes on hold with StubHub , by then the concert had already started it was 6:45 and my niece was in tears. StubHub couldn't provide any logical information why our tickets had been canceled, but they had re-released our same tickets for 4 k each now, meaning they decided to cancel our tickets that we had already paid for 2k each to resell them for 4K each. My sister and l were both furious how could a seller do that? How could ticket master allow this ? How could Taylor Nation allow for this issues to happen. Michelle didn't get to see you we had to tell a fourteen year old teenager —after we told her we have front stage tickets, your dream is coming through—that she wasn't gonna see you anymore, all while she sat in the car with her make up and hair did and her outfit. Michelle cried the whole ride back home, l couldn't find it on my heart to tell her l am sorry we failed you. Then I began thinking maybe if I can take her to the International tour dates she can still see you, so l came home and spend the second night in a row doing research only to find out every single registration date was already closed for every single international date so we will not be able to get tickets anywhere internationally either. The disappointment and sadnesses my niece is having breaks my heart , my sister and l has a conversation on the phone and we discussed ro still try to get tickets through a second party seller, the truth is those tickets are being sold for almost 16k each ticket. Even though we don't have the funds we could try maxing our my sisters credit cards and buy them, the question is , is it really worth it. Michelle turns fifteen next years we could use that money to buy her a car, take her on a trip anywhere she wants. But she doesn't want that she wants to see Taylor Swift and I ran out of ideas to how to come up with money or tickets to get her to see you. I been awake for three nights now trying to buy tickets for her anywhere in the world because I truly don't care I just want her dream come through, the problem is there is no tickets and for the few places that have not released the tickets registration is closed. How is it that in order to see Taylor Swift a family has to go through all these hazles just to make a kids dream come true. My sister is lucky to have a credit card and love her daughter as much as she does to be willing to indent herself with that much money to go see you. But what about the family's of the kids who don't have that luxury, what about those parents who can even afford the cheapest tickets because they need to use the money for groceries. I love you Taylor l really do and your music has given me a connection with my niece I wouldn't change for the world. But it gets me thinking, is that what Taylor Swift is about, the capitalism's and monopoly sites like ticket master , stub hub . Seatgeek are creating out or your name. Does hat mind only reach and privileged people get to see Taylor Swift, it pains me to see my niece in such agony because Taylor Swift name has been used as a means to monopolized your

**Exhibit B, Page 2 of 3**

EXHIBIT C
Page 104

image and your music. Is that what I want fly nieces values to stand for ? That only wealthy people have the privilege to see her concerts ? And what now , should I tell her she needs to pick a cheaper artist because Taylor Swift is just unaffordable? Should I work 4-5 jobs and still try to buy those 16 k tickets. I am sad and angry and disappointed and I just wonder is it really worth it? I am not sure but I never would have dream than going to see you to a concert will mean literally selling our soul to the devil because that's the only way we can afford Taylor Swift. Is that what you want your music and your name to represent? I know this is not your fault and you have no control of what ticket venues do , but like me hundreds of families feel like this. How do they tell their children they need to pick another artist because they simply can afford to see Taylor Swift. I am simply writing this letter as a fan who is heart broken and disappointed because her little niece won't get to see you this tour and maybe never because we simply can't afford the monopoly Ticket Master has made your name to be.

With Love


Sent from my iPhone


**Exhibit B, Page 3 of 3**

EXHIBIT C
Page 105